**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rafaela MONCLAVO–CRUZ,
Defendant-Appellant.**

**No. 80–1776.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1981.

Decided July 10, 1981.

As Amended on Denial of Rehearing
Nov. 2, 1981.

Louis A. Araneta, Asst. Federal Public Defender, Phoenix, Ariz., for defendants-appellants.

Roger W. Dokken, Asst. U. S. Atty., Phoenix, Ariz., argued for the U. S.; Arthur G. Garcia, Asst. U. S. Atty., Phoenix, Ariz., on brief.

### AS AMENDED ON DENIAL OF REHEARING

Before SKOPIL, SCHROEDER and FARRIS, Circuit Judges.

SKOPIL, Circuit Judge:

Rafaela Monclavo-Cruz appeals her conviction for use of a false alien registration receipt in violation of 18 U.S.C. § 1426(b). We conclude that the evidence used to convict her was derived from an illegal warrantless search of her purse. Therefore we reverse.

### FACTS AND PROCEEDINGS BELOW

In May and early July 1980, two informers told Immigration Investigator Cluff that Monclavo-Cruz was selling counterfeit immigration documents. Cluff watched Monclavo-Cruz' home early one morning and followed her and her male companion, Napoleon Mejia, as they drove off in a car. Cluff stopped the car and asked Mejia for his license in English and in Spanish. When Mejia admitted to being in this country illegally, Cluff arrested him and placed him in his car. Cluff then approached Monclavo-Cruz on the passenger's side of the car and asked her in Spanish where she was from. She admitted to being in this country illegally and said that she had no license, identification, or papers. Cluff arrested her and seized her purse from the car. The purse was either in her hand, on her lap, or on the seat of the car at the time of arrest. Cluff took her and the purse to his vehicle and drove to the Immigration Office. Cluff testified that he did not search her purse immediately because he believed to do so would be a security risk.

About an hour after the arrest and without obtaining a warrant, Cluff searched the purse in his office in Monclavo-Cruz' presence. Cluff testified that he discovered Monclavo-Cruz' temporary driver's permit inside a small closed purse found inside the larger zipped purse. On it, Cluff discovered an alien registration number that allowed him to learn that Monclavo-Cruz had used a false alien registration card at the time she applied for a driver's license. Confronted with this information, Monclavo-Cruz confessed.

The trial court denied Monclavo-Cruz' motion to suppress the evidence derived from the warrantless search of her purse, and she was convicted in a trial on stipulated facts.

## ANALYSIS

### I. Reasonable Expectation of Privacy.

■ The government's contention that the warrantless search of Monclavo-Cruz' purse at the station house was lawful because she had no reasonable expectation of privacy in it has been foreclosed by this court's decision in *United States ·v. Cleary*, 656 F.2d 1302 (9th Cir. 1981) (unzipped canvas bag has fourth amendment protection). Moreover, in *Robbins v. California*, —— U.S. ——, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), a plurality, if not a majority, of the Court rejected the proposition that "the *nature* of a container may diminish the constitutional protection to which it otherwise would be entitled ...." [1] *Id.* —— U.S. at ——, 101 S.Ct. at 2845 (emphasis in original). The Court explained that such a distinction "has no basis in the language or meaning of the Fourth Amendment" because that "Amendment protects people and their effects, and it protects those effects whether they are 'personal' or 'impersonal.'" Secondly, the Court recognized that no one "can sensibly be asked to distinguish the relative 'privacy interests' in a closed suitcase, briefcase, portfolio, duffle bag or box." *Id.* —— U.S. at ——, 101 S.Ct. at 2846. In sum, it is beyond doubt that society recognizes that an expectation of privacy in purses is reasonable.

### II. Search Incident to Arrest.

■ The government contends that the search incident to arrest exception to the warrant requirement recognized in *New York v. Belton*, —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and *United States v.*

*Moreno*, 569 F.2d 1049, 1052 (9th Cir.), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1615, 56 L.Ed.2d 64 (1978), justifies the warrantless search of the purse conducted more than an hour after police gained exclusive control of it. We reject this interpretation of the exception for the same reason that the Supreme Court rejected it in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977):

> [W]arrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," *Preston v. United States*, 376 U.S. [364] at 367 [84 S.Ct. 881 at 883, 11 L.Ed.2d 777] or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*Chadwick*, 433 U.S. at 15, 97 S.Ct. at 2485.

Investigator Cluff testified that he was unable to search the purse at the scene because doing so would have created a security risk. This testimony is not relevant, even assuming that an immediate search of the purse would have been lawful under *Belton*, —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768. In *Belton*, the Court held that a search of the passenger compartment of a car incident to a lawful, custodial arrest of an occupant of the car is reasonable, because articles within this part of a car are "generally, if not inevitably, within 'the

---

1. Justice Stewart wrote only for a plurality of four justices. Justice Stevens clearly agreed with the plurality that all belongings and effects have fourth amendment protection. He stated that "the Fourth Amendment cannot differentiate between 'an orange crate, a lunch bucket, an attache case, a duffel bag, a cardboard box, a backpack, a totebag, and a paper bag.' *Arkansas v. Sanders*, 442 U.S. [753] at 772 [99 S.Ct. 2586 at 2597, 61 L.Ed.2d 235] (Blackmun, J., dissenting). Except for [Justice Powell], all Members of the Court wisely avoid the pitfalls of such an approach ...." *Robbins*, —— U.S. at — --, 101 S.Ct. at 2856 (Stevens, J., dissenting). Justice Stevens dissented because he believed the search of Robbins' closed container was justified by the automobile exception to the fourth amendment's warrant requirement. In this case, no one contends that the automobile exception justified the search of Monclavo-Cruz' purse, because the officer did not have probable cause to search the car.

area into which an arrestee might reach in order to grab a weapon or evidentiary item." *Belton*, —— U.S. at ——, 101 S.Ct. at 2864.

The fact that an officer is prevented from conducting a *Chimel/Belton* search, however, is not a sufficient reason to justify a search an hour later at the station. The protective rationale for the search no longer applies. Furthermore, the Court in *Belton* distinguished *Chadwick* on the basis that the *Chadwick* search was not conducted contemporaneously with the arrest of the suspect, but more than an hour later at the station house. *Belton*, —— U.S. at ——, 101 S.Ct. at 2865. In this case, the search of Monclavo-Cruz' purse was also conducted more than an hour after her arrest at the station house, and thus *Chadwick*, not *Belton*, determines its validity.

III. Inventory Search.

The government also contends that the warrantless search was valid as an inventory search under *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 100 (1976). Again we look to *Chadwick* for guidance, and conclude that the rationale of *Opperman* cannot justify the warrantless search of Monclavo-Cruz' purse.

In *Opperman*, the Supreme Court found that the routine inventory search of Opperman's car without a warrant was reasonable under the fourth amendment. The Court noted that the police had followed standard police procedures in inventorying the contents of a lawfully impounded car when the owner was "not present to make other arrangements for the safekeeping of his belongings" and there was no suggestion that the inventory procedure was a "pretext concealing an investigatory police motive." *Opperman*, 428 U.S. at 375–76, 96 S.Ct. at 3100. In justifying this exception to the warrant requirement, the Court relied on the reduced expectation of privacy in cars, the need to protect the owner's property, the need to protect the police against suits over lost or stolen property, and the need to protect the police and society from danger. *Id.* 428 U.S. at 367–69,

374, 96 S.Ct. at 3096–97, 3099. Justice Powell, who provided the fifth and deciding vote in *Opperman*, noted in his concurring opinion that the *Opperman* rule "provides no general license for the police to examine all the contents" of a lawfully impounded vehicle, and that there was no evidence in the record that the police did anything more "than search for and remove for storage [personal] property without examining its contents." *Id.* 428 U.S. at 380 & n.7, 96 S.Ct. at 3102 & n.7.

In *Chadwick* the Court clarified the reach of the *Opperman* inventory exception. The Court ruled that no exceptions to the warrant requirement of the fourth amendment justified the warrantless search of Chadwick's locked footlocker an hour and a half after the suspects were arrested and the footlocker was taken from their car to the Federal Building in Boston. *Chadwick*, 433 U.S. at 4, 6, 97 S.Ct. at 2479, 2480. The Court carefully noted that there were no special circumstances that might otherwise justify an inventory search:

> The agents had no reason to believe that the footlocker contained explosives or other inherently dangerous items, or that it contained evidence which would lose its value unless the footlocker were opened at once. *Facilities were readily available in which the footlocker could have been stored securely*; it is not contended that there was any exigency calling for an immediate search.

*Id.* 433 U.S. at 4, 97 S.Ct. at 2479 (emphasis added).

Although there is some ambiguity in *Chadwick*, the Court apparently found that the *Opperman* inventory search exception did not apply primarily for two reasons. First, "a person's expectations of privacy in personal luggage are substantially greater than in an automobile." *Chadwick*, 433 U.S. at 13, 97 S.Ct. at 2484. Second, it was possible to move the footlocker to the secure Boston Federal Building where "there was not the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained," in contrast to the less secure

storage facilities for vehicles, which make cars "susceptible to theft or intrusion by vandals." *Id.* at 13 & n.7, 97 S.Ct. at 2484 & n.7. In *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the Court made clear that the rationale of *Chadwick* not only applied to double-locked footlockers, but to all personal luggage including Sanders' unlocked suitcase.

■ The search of Monclavo-Cruz' purse at the station house an hour after her arrest does not qualify as an inventory search. We have already held that Monclavo-Cruz' expectation of privacy in her purse is one that society recognizes as reasonable. The officer clearly had an investigatory purpose, as shown in part by his failure to ask Monclavo-Cruz whether or not she would prefer her purse to be locked intact or inventoried first. The government offered no evidence that its storage facility was not secure or could not reasonably be made secure. Monclavo-Cruz' purse could have been well-protected from theft or destruction without searching it; the possibility of a claim against the police over lost or stolen property would be reduced if the purse had been immediately secured without emptying its contents; and the police had no reason to believe that the purse contained weapons or explosives.

■ We cannot fairly distinguish this case from *Chadwick* and *Sanders*. Therefore we follow the Eighth Circuit in holding that the community caretaking functions of the police are usually well served by simply inventorying personal baggage as a unit without searching it. *United States v. Bloomfield*, 594 F.2d 1200, 1202–03 (8th Cir. 1979); *United States v. Schleis*, 582 F.2d 1166, 1173 (8th Cir. 1978) (en banc).[2]

IV. Search of the Person at the Station House.

■ The government's most persuasive argument is that *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771

(1974), and its progeny, such as *United States v. Passaro*, 624 F.2d 938 (9th Cir. 1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 842 (1981), and *United States v. Ziller*, 623 F.2d 562 (9th Cir.), *cert. denied*, 449 U.S. 877, 101 S.Ct. 221, 66 L.Ed.2d 99 (1980), justifies the warrantless search of the purse.

To analyze this issue properly, it is important to distinguish between the *Edwards* holding and its dicta on which the government relies. *Edwards* authorized a warrantless search of a suspect's clothes at the station house. The government, however, relies on the following statement in *Edwards*: "[S]earches and seizures that could be made on the spot at the time of the arrest may legally be conducted later when the accused arrives at the place of detention." *Edwards*, 415 U.S. at 803, 94 S.Ct. at 1237. We agree with the government that if we were to follow this dicta the warrantless search of Monclavo-Cruz' purse would probably be legal because the officer could probably have searched it at the time of arrest under *Belton*. We do not reach this question, however. We find that this broad statement in *Edwards*, in contrast to its holding, has been circumscribed by *Chadwick* and *Sanders*.

To paraphrase *Sanders*, 442 U.S. at 757, 99 S.Ct. at 2589, we are "presented with the task of determining whether the warrantless search of [appellant's purse] falls on the *Chadwick* or the [*Robinson/Edwards*] side of the Fourth Amendment line. Although in a sense this is a line-drawing process it must be guided by established principles." In *Sanders*, Justice Powell undertook a summary of these principles. He stated that the "mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment," and that only "a few 'jealously and carefully drawn' exceptions provide for those cases where the societal costs

---

**2.** We do not consider under what circumstances routine inventory searches would be lawful under *Opperman*. In this case, we agree with the district court that the search of the purse

was not conducted solely for identification purposes during a routine inventory. *See* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 5.5(b) at 358–60 (1978).

of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." *Sanders,* 442 U.S. at 758, 759, 99 S.Ct. at 2590. In light of these principles, we confine the *Edwards* exception to the person and clothing of an arrestee.

The Court in *Chadwick* specifically distinguished *Edwards* in the following manner:

Unlike searches of the person, *United States v. Robinson,* 414 U.S. 218 [94 S.Ct. 467, 38 L.Ed.2d 427] (1973); *United States v. Edwards,* 415 U.S. 800 [94 S.Ct. 1234, 39 L.Ed.2d 771] (1974), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest.

*Chadwick,* 433 U.S. at 16 n.10, 97 S.Ct. at 2486 n.10. We understand this footnote to mean that once a person is lawfully seized and placed under arrest, she has a reduced expectation of privacy in her *person.* Thus, a search of a cigarette case on the person is lawful once the person is under arrest without reference to any possible danger to the police, *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); and the search of a person's clothes taken from him at the jail the day after his arrest is also lawful simply as reasonable jailhouse procedure. *United States v. Edwards, supra.* In reliance on this line of authority, we approved the warrantless search of an arrested person's wallet taken from his person. *United States v. Passaro,* 624 F.2d at 943; *United States v. Ziller,* 623 F.2d at 562–63. We find it significant that the *Passaro* court characterized the wallet of the arrested person as an "element of his clothing." *Passaro,* 624 F.2d at 944.

Relying on *Passaro* and *Ziller,* the government contends that a purse on the lap at the time of arrest is much like a wallet in the pocket, and thus the warrantless search of the purse should be upheld. We disagree.

Although we recognize that there is a fine line between a wallet on the person and a purse within an arrestee's immediate control, we hold that possessions within an arrestee's immediate control have fourth amendment protection at the station house unless the possession can be characterized as an element of the clothing, or another exception to the fourth amendment requirements applies. Monclavo-Cruz' purse, like a suitcase or briefcase in which a suspect has a fourth amendment interest at the station house, cannot be characterized as an element of her clothing or person, even if it were on her lap at the time of arrest. Although the officer had a right under *Belton* to search the purse taken from the car at the time of Monclavo-Cruz' arrest, we hold that the officer had no right to conduct a warrantless search of the purse at the station house.[3]

The broad reading of *Edwards* proposed by the government would allow the police to seize everything within the passenger compartment of a car, take it to the station house, and search it without probable cause, a warrant, or reasonable reliance on the inventory or automobile exceptions. In light of *Chadwick,* we decline to create such a broad exception to the requirements of the fourth amendment that would have no independent justification under either the rationale for the *Edwards* or *Belton* rules. Moreover, we believe that police officers, mindful of the preference for warrants long recognized by the Supreme Court, will not find it too burdensome to secure a warrant under appropriate circumstances.

## CONCLUSION

We hold that Monclavo-Cruz' expectation of privacy in her purse was one that society recognizes as reasonable. The officer's failure to follow the search warrant requirement of the fourth amendment cannot be

---

**3.** We are not the first court to reach this conclusion. The Eighth Circuit, sitting en banc, unanimously (Gibson, C. J., concurring in the result) held that *Chadwick* applied to a warrantless search of a briefcase at the station house and declined to apply the *Edwards, Chimel,* and *Opperman* exceptions to the probable cause and warrant requirements of the fourth amendment. *United States v. Schleis,* 582 F.2d 1166 (8th Cir. 1978) (en banc).

excused in this case by characterizing the search of the purse as incident to arrest, as a search of the person after arrest, or as an inventory search. Therefore we suppress the evidence derived from the unlawful search and reverse Monclavo-Cruz' conviction.

REVERSED.