**STATE of Missouri, Plaintiff-Respondent,**

v.

**Rae Ellen WOODS, Defendant-Appellant.**

No. 44224.

Missouri Court of Appeals, Eastern District, Division Two.

May 18, 1982.

Motion for Rehearing and/or Transfer Denied July 16, 1982.

Application to Transfer Denied Sept. 13, 1982.

Charles M. Shaw, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant appeals from a conviction of aiding the escape of a prisoner by introducing a deadly weapon into a place of confinement, a felony under section 575.230.2, RSMo 1978. She asserts the following points of trial court error: (1) admitting into evidence items procured from her purse through a warrantless search and seizure; (2) admitting into evidence a gun resembling the weapon used in the alleged felony; (3) permitting the state to proceed to the jury on more than one charge; (4) instructing the jury to return its verdict on only one of the four verdict forms; (5) instructing the jury that the judge could sentence defendant to payment of a fine; (6) permit-

ting the state to elicit on cross-examination of defendant information concerning her prior convictions; and (7) overruling defendant's motions for acquittal.

We affirm.

The cynosure of this case is the escape by Larry Miller, Leonard Olson and Jesus Martinez from the St. Louis County jail. The defendant's particular interest was in Larry Miller, her inamorato.

As part of her involvement in the escape, defendant, who resided in Arizona, purchased and mailed a revolver along with $150.00 seed money to Olson's brother, Kevin, in St. Louis. Olson had previously discussed an escape scheme with his brother in which a gun would be slipped into a sock tied to the end of a rope dangling from a jail window. Shortly after sending the gun and money, defendant flew to St. Louis and was accommodated at Kevin Olson's residence for a time before moving in with other friends in the St. Louis area, taking the pistol with her.

A couple of days before the escape, defendant was observed by a jail official lounging about an area outside the jail. The escape took place as Miller, Olson and Martinez were participating in their exercise program in the jail gymnasium. Miller pointed a gun at the guards, Olson handcuffed them, and the three escapees slithered down a rope hanging out the jail window. Investigators later discovered in the gymnasium a second rope, which consisted of strips of white cloth tied together with a sock at its end.

To Olson's total discomfiture the means to his escape were too short, for when he came to the end of his rope he fell to the ground, breaking his ankle. He was immediately captured.[1]

Miller's bid for freedom was no more successful than the others, but it took a little longer to catch him. Seven days after the escape effort, law enforcement officers arrested Miller in defendant's Arizona residence. Defendant was taken into custody at a nearby motel. An auto leased by de-

1. Martinez was also captured in St. Louis County within a few days.

fendant in St. Louis was uncovered at the Topeka, Kansas, airport. A soda can in the auto bore Larry Miller's fingerprints.

The first point on appeal concerns the search by police of defendant's purse. As Arizona police were taking her from her motel to the police station for interrogation, defendant's purse, which she had initially held in her possession, was placed between two officers. At the station, defendant remained separated from her purse by about six to eight feet. When asked by a deputy sheriff for some identification, defendant indicated that it was in her purse. The sheriff, who at trial expressed concern that a weapon might have been concealed in the purse, dumped its contents on a table. The items falling on the table were airplane tickets, a copy of an auto lease, letters from Larry Miller and his photograph, a Topeka airport parking claim check and some marijuana. All the items were seized and admitted into evidence. Defendant asserts that the warrantless search was wrongful and that the items of evidence should have been suppressed.

We note initially that there was ample evidence to support defendant's conviction without reference to any items found in the purse. But, nevertheless we shall consider the issue of the warrantless search and whether it was unlawful in this instance.

■ Incident to an arrest, an officer may conduct a warrantless search of the person of the arrestee and the area within her immediate control in order to prevent the arrestee from obtaining a weapon or destructible evidence. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Searches and seizures that could have been made at the time and place of arrest may be conducted later when the arrestee is at the place of detention. *United States v. Edwards*, 415 U.S. 800, 803, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771, 775 (1974). However, after police have reduced property of the arrestee, such as luggage, to their exclusive control, making it impossible for the arrestee to gain access to it, search of

that property is no longer an incident of the arrest, and a search warrant must be secured. *United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, 551 (1977).

■ The search of defendant's purse fell within the limits set by *Chimel* and *Edwards*. The purse was in her possession at the time of arrest and was certainly then subject to search. It was not so clearly distant from her at the police station as to make it impossible for her to gain access to it. *See State v. Brasel*, 538 S.W.2d 325, 332 (Mo. banc), *cert. denied*, 429 U.S. 1022, 97 S.Ct. 639, 50 L.Ed.2d 623 (1976); *State v. Webb*, 560 S.W.2d 318, 321–22 (Mo.App. 1977). Deputy Sheriff Geary, who conducted the search, had been warned that she may be armed; it would have been absurd under such circumstances for him to hand her the purse to procure identification.

The situation here is readily distinguishable from *Chadwick*, in which a locked footlocker was seized at the time of arrest and delivered to a building remote from the arrestees' place of detention. We note further that a woman's purse is, like the arrestee's clothes in *Edwards*, more immediately associated with the person of the accused than is other personal property, such as luggage or an attache case. *United States v. Berry*, 560 F.2d 861, 864 (7th Cir. 1977), *vacated on other grounds*, 571 F.2d 2 (7th Cir.), *cert. denied*, 439 U.S. 840, 99 S.Ct. 129, 58 L.Ed.2d 138 (1978); *United States v. Venizelos*, 495 F.Supp. 1277, 1282–83 (S.D. N.Y.1980). We conclude that the warrantless search of defendant's purse was a lawful search incident to arrest, and the admission into evidence of the items seized was proper. *See United States v. Moreno*, 569 F.2d 1049, 1052 (9th Cir.), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1615, 56 L.Ed.2d 64 (1978); *United States v. Venizelos*, 495 F.Supp. at 1279–83; and *Sumlin v. State*, 266 Ark. 709, 587 S.W.2d 571, 577 (banc 1979), finding warrantless search of arrestee's purse to be lawful.[2]

---

2. The search of defendant's purse could also be deemed lawful as an inventory search, designed to protect the owner's property interest in its contents. *South Dakota v. Opperman*, 428 U.S.

In her second point, defendant alleges trial court error in admitting into evidence a gun which was not the weapon used in the escape and was never owned by defendant. Testimony of various witnesses indicated, however, that the pistol admitted into evidence was the same model as that purchased by defendant and closely resembled the one used in the escape. Authorities failed to locate the actual weapon used.

■ A model, reproduction or replica of an unavailable object is admissible so long as it fairly represents the object which it is offered to demonstrate and it is relevant to a material issue. As with all demonstrative evidence, the admissibility of a reproduction rests within the trial court's broad discretion. *State v. Holmes,* 609 S.W.2d 132, 135–36 (Mo. banc 1980); *State v. Sanders,* 619 S.W.2d 344, 349 (Mo.App. 1981); *State v. Black,* 618 S.W.2d 466, 469 (Mo.App.1981). When the actual weapon used in a crime is unavailable, and the above criteria are met, a model or replica of the weapon may be admitted into evidence. *State v. Nelson,* 484 S.W.2d 306, 307 (Mo. 1972); *State v. McClain,* 404 S.W.2d 186, 191 (Mo.1966).

■ The state established here that it was unable to locate the actual gun used in the escape and that the gun offered in evidence was the same model as the one purchased by defendant and closely resembled the escape weapon. The replica was definitely relevant to material issues. The situation is distinguishable from cases where the state insufficiently established either the similarity between the actual object and the model or that the evidence offered was merely a reproduction. *State v. Merritt,* 460 S.W.2d 591 (Mo.1970); *State v. Wynne,* 353 Mo. 276, 182 S.W.2d 294, 299–300 (1944); *State v. Fristoe,* 620 S.W.2d 421, 426–27 (Mo.App.1981). The trial court did not abuse its discretion in admitting the gun into evidence.

364, 375–76, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000, 1009 (1976); *State v. Quinn,* 565 S.W.2d

■ Defendant next contends that the trial court erred in overruling her motion to require the state to proceed on only one count. The jury received verdict directing instructions on Count I, introducing a deadly weapon into a place of confinement for the purpose of facilitating the escape of a prisoner, and on Count II, aiding the escape of a prisoner being held in confinement. Defendant maintains that permitting the state to proceed to the jury on both counts placed her in unconstitutional double jeopardy for a single offense and violated section 556.041, RSMo 1978.

■ The jury was also instructed, however, that the charges were made in the alternative and that it could not find defendant guilty of more than one charge. In fact, the jury found defendant guilty of only Count I, acquitting her of Count II. There was no violation of section 556.041, which would prohibit only the conviction of both offenses where one offense describes a general kind of conduct and the other a specific instance of that conduct. Nor was defendant placed in double jeopardy, as she is not being punished twice for a single offense. Inasmuch as defendant was acquitted of the second charge, it caused her no prejudice, and her point relating to the submission of both charges lacks substance. *State v. Coles,* 604 S.W.2d 21, 23 (Mo.App. 1980); *State v. Coleman,* 599 S.W.2d 789, 790 (Mo.App.1980).

Defendant alleges additional error in instructing the jury to return its verdict on only one verdict form though it was supplied with four forms—one applicable to a guilty verdict on Count I, one for a guilty verdict on Count II, one for a not guilty verdict on Count I, and one for a not guilty verdict on Count II. Defendant contends that the instruction made it impossible for the jury to render a verdict of not guilty on both counts.

■ The use of the challenged instruction was mandatory, however, as it complied with MAI–CR2d 2.71—the applicable

665, 672 (Mo.App.1978).

MAI–CR instruction. Rule 28.02(c). It is not our position to declare it erroneous. *State v. Hampton*, 607 S.W.2d 225, 227 (Mo. App.1980). Further, considering all the instructions together, as we must, we find no prejudicial error in the submission of this instruction. *State v. Holt*, 592 S.W.2d 759, 776 (Mo. banc 1980); *State v. Ealey*, 624 S.W.2d 465, 467 (Mo.App.1981); *State v. Harris*, 602 S.W.2d 840, 847 (Mo.App.1980). The challenged instruction clearly directed the jury to find defendant either guilty of only one of the charged offenses or not guilty of any of them. Another instruction advised the jury to "complete the applicable form(s) to which you unanimously agree." There was neither error nor prejudice to defendant in the submission of this instruction.

■ Defendant next asserts that the trial court erred in instructing the jury that if it found defendant guilty under Count II, the court could sentence her to imprisonment, payment of a fine or both. Defendant contends that payment of a fine is not an optional punishment under the law for the offense charged, that is, aiding the escape of a prisoner being held in confinement.

Defendant is incorrect. She acknowledges that Miller's confinement was based on a felony charge. Under section 575.230.-2, RSMo 1978, it is a Class D felony to aid the escape of a prisoner being held in confinement because of a felony charge. A person convicted of a Class D felony may be sentenced to payment of a fine. § 560.011.-1(1), RSMo 1978. Submission of the instruction was proper. MAI–CR2d 2.60.

Defendant's point six concerns the prosecutor's inquiries on cross-examination as to her prior convictions. On direct examination defendant revealed a prior conviction for possession of marijuana, which she had taken into a jail. During cross-examination the prosecutor read the charges against defendant and questioned her as follows:

MR. CHANCELLOR [Prosecutor]: . . . Count I says . . . on or about the 18th day of April, 1969 in the County of Orange, the state of California, the said defendant did willfully, unlawfully and feloniously bring into Orange County Jail . . . a narcotic, to-wit, marijuana and she pled guilty to the charge; is that correct?

THE WITNESS [defendant]: That's correct.

Q. . . . In Count II it says . . . on or about the 18th day of April, 1969, in the County of Orange, state of California, the said defendant did willfully, unlawfully and feloniously have in her possession, a narcotic, to-wit, marijuana.

\*   \*   \*   \*   \*   \*

Q. . . . You knew that possession of marijuana was a violation of the law, is that right?

A. Yes.

Q. . . . Are you telling these people, Mrs. Woods, that knowingly, you willfully took the marijuana into the jail right in front of the guards and everybody?

A. I took it in the jail.

Q. You say it was only for your own use?

A. That's right. That's all. It wasn't meant for anyone else. There was only enough for myself.

Defendant contends the trial court erred in overruling her counsel's objections to this line of interrogation.

■ The state has the right to reveal, on cross-examination, a witness' prior convictions for impeachment purposes. The nature, dates and places of the occurrences and the resulting punishments may be elicited. It is impermissible, however, for the state to delve into details of a convicted crime so as to unduly emphasize or aggravate it. The scope of such cross-examination rests within the discretion of the trial court. *State v. Teal*, 624 S.W.2d 122, 124–25 (Mo.App.1981); *State v. Lane*, 613 S.W.2d 669, 679 (Mo.App.1981); *State v. Williamson*, 584 S.W.2d 628, 630 (Mo.App. 1979).

■ The prosecutor did not reveal "every possible detail" of the prior crimes, as defendant contends on appeal. He made only permissible inquiry into the nature,

date and place of the offense. His questions concerning defendant's knowledge and intent, while perhaps ill-advised, went to the nature of the convictions and did not so aggravate the fact of the prior convictions as to cause defendant prejudicial harm. *Compare State v. Sanders*, 634 S.W.2d 525 (Mo.App.E.D.1982) in which the prosecutor, on cross-examination of a defendant charged with rape, impermissibly elicited details of defendant's past convictions for kidnapping and rape, such as the names and ages of the prior victims and referred again to them by name in closing argument. Here, the prosecutor's questions were properly designed to impeach defendant's credibility and did not unduly emphasize her past convictions to her prejudice. The trial court did not abuse its discretion in permitting the cross-examination.

▮ Defendant contends finally that the trial court erred in overruling her motion for acquittal. In considering the sufficiency of the evidence, we review the evidence and all reasonable inferences therefrom in the light most favorable to the state, disregarding all evidence and inferences to the contrary. Any element of a crime may be established by circumstantial evidence. The circumstances need not be absolutely conclusive of guilt; they must, however, be inconsistent with defendant's innocence. *State v. Garrett*, 627 S.W.2d 635, 642 (Mo. banc 1982); *State v. Thurber*, 625 S.W.2d 931, 933 (Mo.App.1981); *State v. Mangan*, 624 S.W.2d 156 (Mo.App.1981).

▮ It can reasonably be inferred from the evidence that defendant facilitated Larry Miller's escape from jail by providing him with a gun—placed in a sock at the end of a rope lowered by Miller or his cohorts from a jail window—and driving off with him in a get-away car that she had rented. Overruling the motion for acquittal was not error.

Judgment affirmed.

DOWD, P. J., and SMITH, J., concur.