STATE of Wisconsin, Plaintiff-Respondent,

v.

Kathleen Jo WADE, Defendant-Appellant.†

Court of Appeals

*No. 97–0193–CR. Submitted on briefs October 24, 1997.—Decided December 17, 1997.*

(Also reported in 573 N.W.2d 228.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J.   If police take possession of a purse at the scene of arrest but do not examine its contents at that point and an officer wants to return the purse to the arrestee while she is *still* in police custody in the station house interrogation room, is the officer justified in examining the contents of the purse first for "police safety" reasons? We conclude that the answer is "yes" and therefore reject Kathleen Jo Wade's claim that the warrantless search of her purse conducted at the police station some time after her arrest was illegal. We affirm her conviction of possessing cocaine with intent to deliver.

A police officer stopped the vehicle Wade was driving for inoperable taillights. After stopping the vehicle, the officer discovered that Wade did not have a valid driver's license and took Wade into custody. The officer removed Wade's purse from the front seat of her vehicle and put it in the front seat of his squad car. The officer stated that he originally removed the purse from Wade's vehicle to prevent its theft from the vehicle, which was locked and left at the scene of the arrest. However, he retained custody of the purse instead of immediately returning the purse to her because he was unsure if it contained firearms or other weapons. The officer did not handcuff or pat down Wade for weapons; he simply "made a visual observation" of Wade for weapons prior to placing her in his squad car.

At the police station, Wade was placed in an interrogation room and the officer continued to retain custody of Wade's purse. The officer informed Wade that she would be free to go after she paid a fine and posted bail. Wade made a phone call and then informed the officer that a friend of hers was going to come to the station and post bail. The officer then decided to return the purse to Wade, but before doing so he proceeded to

search the purse, in Wade's presence, in order to "satisfy [him]self that it did not contain any weapons." Inside the purse the officer found cocaine and drug paraphernalia.

Wade was subsequently charged with one count of possession of cocaine with intent to deliver contrary to §§ 161.41(1m)(cm)2 and 161.50, STATS., 1993–94, and one count of unlawful possession of a prescription drug contrary to § 450.11(7)(h) and (9)(a), STATS., 1993–94. At trial, Wade filed a motion to suppress the evidence seized during the warrantless search of her purse. The motion was denied. Wade appeals this decision.

■

Both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution guarantee citizens the right to be free from "unreasonable searches." *See State v. Betterley,* 191 Wis. 2d 406, 415, 529 N.W.2d 216, 219 (1995). In construing Article I, Section 11 of the Wisconsin Constitution, we consistently follow the United States Supreme Court's interpretation of the Fourth Amendment. *See State v. Bohling,* 173 Wis. 2d 529, 536 n.7, 494 N.W.2d 399, 401 (1993). When the material facts are not in dispute, the question of whether the police conducted an unreasonable search is a question of law which we review without deference to the trial court. *See State v. Tompkins,* 144 Wis. 2d 116, 121, 423 N.W.2d 823, 825 (1988).

Wade concedes, as she must, that under *New York v. Belton,* 453 U.S. 454 (1981), the arresting officer could have lawfully searched her purse at the time of her arrest.[1] Wade points out, however, that any search

---

[1] Under *Belton*, the police may search the passenger compartment of a vehicle, and any containers therein, upon the lawful arrest of the driver or some other occupant of the vehicle.

authorized by *Belton* must be contemporaneous with the arrest. *See id.* at 460. Therefore, because the officer waited to search the purse until Wade was at the police station and had made arrangements for her release, she concludes that the warrantless search was not sufficiently contemporaneous with her stop and arrest to be justified as a search incident to an arrest under *Belton*.

The State makes a concession in turn. It agrees that *Belton* does not authorize the warrantless search of Wade's purse. It contends, however, that the search of Wade's purse was permissible under *United States v. Edwards*, 415 U.S. 800 (1974), as limited by *United States v. Chadwick*, 433 U.S. 1 (1977).

In *Edwards*, the defendant was arrested and jailed overnight; the following morning the police seized and searched his clothing. *See Edwards*, 415 U.S. at 801–02. The Court held that both the arrestee's person and the property in his immediate possession may lawfully be searched at the station house after an arrest. *See id.* at 803. In upholding the search, the Court stated:

> [S]earches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention. . . .
>
>  . . . .
>
> [O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time

*See New York v. Belton*, 453 U.S. 454, 460 (1981). Therefore, it is clear that it would have been reasonable for the officer to search the purse for weapons or evidence at the scene of the arrest.

and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.

*Id.* at 803, 807 (footnote omitted). Moreover, the Court noted that individuals, following their legal arrest, have their privacy interest taken out of the realm of protection—for a reasonable time and to a reasonable extent—from the police interest in weapons, means of escape and evidence. *See id.* at 808–09. Thus, under *Edwards* the police may conduct a search of property at the station house of items they could have searched at the scene of a defendant's arrest.

In *Chadwick*, however, the Supreme Court limited the scope of warrantless searches permitted under *Edwards*. There, the police arrested the defendants as they were getting into their car and seized a locked footlocker which the police suspected contained illegal narcotics. *See Chadwick,* 433 U.S. at 4. The police took both the defendants and the footlocker back to the police station where the footlocker was then placed in a secure storage area inaccessible to the defendants. *See id.* Later that day, the police opened the footlocker and discovered a large quantity of marijuana. They did so without either the defendants' consent or a search warrant. *See id.* at 4–5.

The Court observed that warrantless searches of luggage or other property, even though they would be justified at the time of the arrest, cannot be justified as incident to the arrest if the search is remote in time or place from the arrest and no exigency exists. *See id.* at 15. Once law enforcement officers had reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there was no longer a danger that the arrestee would gain access to the property to seize a weapon or destroy evidence, a search of that property was no longer an incident of the arrest. *See id.* Therefore, the warrantless search of the defendants' footlocker was illegal because it had been reduced to the immediate control of the police and there was no longer a risk that the defendants could gain access to the footlocker to seize a weapon or destroy evidence. *See id.*

Reading the foregoing cases together, some general rules emerge as to when the police may conduct a delayed search at the station house of items they could have searched at the scene of a defendant's arrest. Under *Edwards,* the police may conduct a delayed search of any item they could have searched at the scene of the arrest. *See Edwards*, 415 U.S. at 803. However, the authority to conduct warrantless searches is not as broad as *Edwards* would suggest because *Chadwick* carves out a major exception to the *Edwards* rule. The *Chadwick* exception applies, and the police must first obtain a warrant prior to conducting their search, when two conditions are met. First, law enforcement officers must have reduced the luggage or other personal property not immediately

associated with the person of the arrestee to their exclusive control. *See Chadwick,* 433 U.S. at 15. Second, there must no longer be any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence. *See id.* If either condition is unmet, *Chadwick* is inapplicable.

We now apply these general rules to the facts of the case at bar. As we stated at the outset, it is undisputed that the officer could have searched the purse at the time he took Wade into custody. Therefore, under *Edwards,* the police could have lawfully conducted a warrantless search of Wade or Wade's purse at the station house. *See Edwards*, 415 U.S. at 803. The issue is whether *Chadwick* placed a limit on the officer's authority to conduct the warrantless search. The State contends that the delayed search of Wade's purse was reasonable under *Edwards* because neither of the *Chadwick* conditions were met. We choose to focus on the second *Chadwick* condition: whether there is no longer a danger that the arrestee might gain access to the property to seize a weapon or destroy evidence.[2]

In *Chadwick*, the locked footlocker was placed in a secure storage facility that was inaccessible to the defendants. *See Chadwick,* 433 U.S. at 4. The warrantless search was not reasonable, therefore, because there was no longer any danger that the

---

[2] The State further contends that the search was justified because a purse is an item immediately associated with the person of the arrestee. Because our conclusion that there was a danger Wade might gain access to the purse to seize a weapon or destroy evidence resolves the issue of whether the delayed search was reasonable, we decline to address this alternative argument. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (appellate court will not decide other issues raised if decision on one point disposes of an appeal).

arrestees would gain access to the footlocker and seize weapons or destroy evidence. *See id.* at 15. But *Chadwick* does not speak to the situation at bar in which the officer anticipates returning a purse to an arrestee who is going to remain in custody at the police station for an indefinite period. As already noted, Wade was in the interrogation room at the time the officer decided to return her purse to her. She was going to remain in that room until her friend arrived and posted bail. This is not a situation where she was out of custody and on her way out the door of the station.

■Under these circumstances, *Chadwick* does not apply because Wade was about to gain access to her purse from which she could have produced a weapon or destroyed evidence while *still* in police custody at the station house. Not only was it reasonable for the officer to search the contents of her purse before giving it back to her under these circumstances, we think it would be unreasonable for arrestees to expect that they can get back a purse without examination while they are still in custody at a police station. We are satisfied that the same concerns about personal safety and security that would have justified a search at the time of the arrest also justified the delayed search of Wade's purse. That is what *Edwards* and *Chadwick* stand for. Moreover, as we previously noted, following a legal arrest an individual's privacy interest is for a reasonable time and to a reasonable extent taken out of the realm of protection from the police interest in weapons, means of escape and evidence. *See Edwards*, 415 U.S. at 808–09. Here, Wade was the subject of a legal arrest

and thus had reduced expectations of privacy from police searches for weapons.[3]

Finally, we note that the authority Wade cites to support her position, *United States v. Monclavo-Cruz*, 662 F.2d 1285 (9th Cir. 1981), is readily distinguishable from the facts in the case at bar. In *Monclavo-Cruz*, an immigration officer stopped the defendant's car and placed her under arrest. *See id.* at 1286. The officer seized the defendant's purse and then drove the defendant to the police station. *See id.* The officer did not search the purse immediately "because he believed to do so would be a security risk." *Id.* Instead, the officer searched the purse at the police station in the presence of the defendant approximately one hour after the arrest. *See id.* The officer discovered various items in the purse which were later used to convict the defendant for using a false alien registration receipt. *See id.*

On review, the court held that the warrantless search of the defendant's purse was too far removed in time and place to be a search incident to arrest under *Belton*. *See Monclavo-Cruz*, 662 F.2d at 1288. However, in *Monclavo-Cruz,* there was no indication that the purse was searched as a precursor to returning it to the

[3] We note that our decision comports with the decisions of courts in other states which have reached the same conclusion in similar circumstances. *See, e.g., State v. Horton*, 260 S.E.2d 780, 781 (N.C. Ct. App. 1979) (officer's right to search for weapons on the person or within the immediate control of arrestee justifies warrantless search of pocketbook as prelude to its return); *State v. Woods*, 637 S.W.2d 113, 116 (Mo. Ct. App. 1982) (search at police station of purse seized from defendant at time of arrest justified because the purse was not so distant from defendant at police station as to be completely inaccessible to her).

arrestee while she was still in custody. Instead, the purse was searched as part of the officer's criminal investigation of the defendant. The officer was not going to be returning the purse to the arrestee any time soon and there was no danger that the arrestee would gain access to the purse and seize a weapon or destroy evidence. This distinguishes *Monclavo-Cruz* from the present case where the search was conducted prior to giving the arrestee control of the purse. *Monclavo-Cruz,* therefore, is not material to our analysis.

*By the Court.*—Judgment affirmed.