**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-2858
_____

Shirley Curd,                                    *
                                                 *
    Plaintiff-Appellant,                     *
                                                 * Appeal from the United States
                                                 * District Court for the Eastern
    v.                                       * District of Arkansas.
                                                 *
City Court of Judsonia,                          *
Arkansas; Don Raney,                             *
Honorable Judsonia City                          *
Judge; Judsonia Police                           *
Department,                                      *
                                                 *
    Defendants,                              *
                                                 *
Jess Odom, White County                          *
Sheriff; City of Judsonia,                       *
Arkansas;                                        *
                                                 *
    Defendants-Appellees,                    *
                                                 *
State of Arkansas; City                          *
of Searcy, Arkansas,                             *
                                                 *
    Defendants.                              *


_____

Submitted: January 15, 1998

Filed: April 6, 1998
_____

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit
    Judge and SACHS,[1] District Judge.

_____

[1]The Honorable Howard F. Sachs, United States District Judge
for the Western District of Missouri, sitting by designation.

SACHS, District Judge.

Shirley Curd brought this 42 U.S.C. § 1983 action against the City of Judsonia, Arkansas ("the City"), and White County, Arkansas, Sheriff Jess Odom.[2] Curd sought damages for alleged excessive force in effecting her arrest, unreasonable search and seizure of fingerprint evidence during the booking process, and unreasonable search of her purse at the station house following her arrest. The district court[3] granted summary judgment in favor of defendants and Curd appeals. We affirm.

**I.**

Armed with an arrest warrant, City police officers Bobby Hale, the Chief of Police, and Darren Kee went to Curd's residence to arrest her on misdemeanor charges of battery and disorderly conduct. As they were escorting Curd out of the house, the officers initially told Curd that she would be able to drive her own car to the White County detention center (the City does not have a jail), and that she would be allowed to go next door to her office to get bail money. When Curd began to go next door, however, Chief Hale seized her arm, spun her around and told her to get into the police car. She complied.

At the time of Curd's arrest, the officers took her purse. After arriving at the detention center, Curd's purse was removed from her sight. When Curd asked for her purse to be placed in view, Chief Hale, some fifteen minutes after Curd's arrest, searched it.[4] Curd describes the search as taking a couple of

---

[2]The State of Arkansas, the City of Searcy, Arkansas, and Judsonia Municipal Judge Don Raney were also named as defendants in this action. The trial court granted these defendants' motions to dismiss, and the dismissals are not at issue in this appeal.

[3]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

[4]The standard procedure at the detention center is to conduct an inventory search of items belonging to arrestees. No written inventory of the purse's contents was taken by Chief Hale.

minutes and as involving "pull[ing] several things out," "rummag[ing] around with the stuff in the bottom and then . . . put[ting the] stuff back in."

During the booking process, Curd was fingerprinted three separate times. Curd expresses uncertainty about whether Chief Hale was involved in the fingerprinting. Chief Hale denied any involvement by himself or any member of the City police force, stating that the fingerprinting was done by a member of the Sheriff's department. Defendants do not offer an explanation for the repeated fingerprinting; Curd contends that harassment motivated the officers.

Curd's son posted bail and, following booking, Curd was released. Twenty days later, on September 5, 1996, Curd filed this action alleging violation of Federal constitutional rights.

## II.

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir. 1997). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A. Excessive Force Claim

Curd first claims that the district court erred in granting summary judgment on her excessive force claim. We disagree. Fourth Amendment excessive force claims are evaluated under a standard of "objective reasonableness." Graham v. Connor, 490 U.S. 386, 395 (1989); Greiner v. City of Champlain, 27 F.3d 1346, 1354 (8th Cir. 1994). Even if seizing Curd's arm and turning her body was unnecessary to effect the arrest, we can not conclude that this

limited amount of force was objectively unreasonable.[5]  See, e.g., Joos v. Ratliff, 97 F.3d 1125, 1126 (8th Cir. 1996) (per curiam) ("de minimis" amount of force in effecting an arrest would be insufficient to create constitutional issue).  "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion" and thus "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the fourth amendment."  Graham, 490 U.S. at 396.  See also Haberthur v. City of Raymore, 119 F.3d 720, 723 (8th Cir. 1997) ("Section 1983 is intended to remedy egregious conduct, and not every assault or battery . . . will create liability under it.").  Our conclusion is bolstered by the fact that Curd does not allege, and there is no evidence, that she was injured or experienced physical pain as a result of Hale's actions.  See, e.g., Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995) (arrestee demonstrated actual injury).[6]  The conduct of Chief Hale in arresting Curd was not so egregious that we can find a constitutional violation.

---

[5]We assume, without deciding, that Chief Hale was a policymaker for the defendant City.

[6]The Court declines the City's invitation to resolve the question of whether a Fourth Amendment claim of excessive force requires a showing of some minimum level of injury.  See, e.g., Ikerd v. Blair, 101 F.3d 430, 433 (5th Cir. 1996).  As we did in Dawkins, we reserve that question.  Dawkins, 50 F.3d at 535.  We hold merely that the absence of injury to Curd is a factor that, along with the minimum amount of force applied by the officers, undermines Curd's excessive force claim.  See, Greiner, 27 F.3d at 1355.

## B. Multiple Fingerprinting Claim

Curd next claims that the district court erred in granting summary judgment on her claim that fingerprinting her three times constituted an unreasonable search and seizure. We again disagree. The custodial fingerprinting of Curd during the booking process was routine; a complaint regarding multiple prints (like a complaint regarding several allegedly unnecessary photographs) following a valid arrest is also simply too minor to rise to the level of a constitutional violation. See, e.g., United States v. Weir, 657 F.2d 1005, 1007 (8th Cir. 1983) (nonconsensual custodial clipping of hair "so minor . . . [that] fourth amendment rights were not implicated"); United States v. Williams, 902 F.2d 678, 680-81 (8th Cir. 1990) (suggesting that fingerprinting of suspect arrested upon probable cause does not constitute a search; even an ultraviolet light examination is not a search). Moreover, Curd expresses considerable uncertainty as to whether the City's officers conducted the fingerprinting, and Chief Hale expressly denies that any member of the City police department was involved.

We are aware of a remark in Davis v. Mississippi, 394 U.S. 721, 727 (1969), that "the police need only one set of each person's prints." Even if the comment could pose a limitation on law enforcement rights when there is simply a "fingerprint detention," as discussed in Davis, we are satisfied that the ruling does not mean that an arrestee's Fourth Amendment rights are violated by taking several sets of fingerprints.

## C. Purse Search

Curd finally claims that the district court erred in granting summary judgment on her claim that defendants unconstitutionally searched her purse after she asked that the purse be placed where she could see it. The district court concluded that the search constituted a valid inventory search. We need not decide whether

this conclusion was correct,[7] because we conclude that the search was valid incident to Curd's arrest.  See Cooksey v. Delo, 94 F.3d 1214, 1218 (8th Cir. 1996) (appellate court may affirm on any basis supported by the record), cert. denied, ____ U.S. ____, 118 S.Ct. 624 (1997).  We also find nothing in the separate claim against Sheriff Odom that merits discussion.

Warrantless searches incident to a custodial arrest are "justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained."  United States v. Edwards, 415 U.S. 800, 802-03 (1974) (citing United States v. Robinson, 414 U.S. 218 (1973)).[8]  The search must be of objects within the arrestee's area of "immediate control" and must be "contemporaneous" with the arrest.  United States v. Morales, 923 F.2d 621, 627 (8th Cir. 1991).  Curd's purse qualified as an object within her area of "immediate control."[9]

---

[7]Although we find it unnecessary to reach it here, there is some question as to whether the search of Curd's purse could be justified as a valid inventory search.  United States v. Johnson, 834 F.2d 1191, 1198 (5th Cir. 1987) (jailing, rather than mere booking, justifies inventory search), withdrawn on other grounds, 846 F.2d 279 (5th Cir. 1988).

[8]The right to conduct a warrantless search incident to a lawful arrest exists whether or not the officer has probable cause to believe that he is exposed to danger or that the defendant has access to destructible evidence.  United States v. Chadwick, 433 U.S. 1, 14-15 (1977).

[9]It matters not whether Curd was capable of reaching the purse at the time of the search.  See New York v. Belton, 453 U.S. 454, 461-62 n. 5 (1981); Morales, 923 F.2d at 626 ("'accessibility, as a practical matter, is not the benchmark'" for assessing the search) (quoting United States v. Palumbo, 735 F.2d 1095, 1097 (8th Cir. 1984)); 3 W. LaFave, Search and Seizure, § 5.3(a) at 111 (1996) ("the scope of the search at the station is not limited to items *then* in the 'immediate control' of the defendant; it is sufficient that the items were on his person at the time of arrest.") (emphasis in original; footnote omitted).

The timeliness requirement is also satisfied. The search took place at the station house about fifteen minutes after Curd was arrested. This delay could be fatal if, for example, a large piece of luggage were opened and inspected without a warrant. See United States v. Chadwick, 433 U.S. 1, 15 (1977) (station house search of two-hundred pound footlocker over an hour after arrest too remote in time and place for warrantless search incident to arrest); United States v. $639,558 In U.S. Currency, 955 F.2d 712, 715-16 (D.C. Cir. 1992) (luggage search half an hour after arrest not contemporaneous). The timeliness requirement for "luggage or other personal property not immediately associated with the person of the arrestee" is, in other words, constitutionally fairly strict. See, e.g., Chadwick, 433 U.S. at 15.

On the other hand, searches of the person and articles "immediately associated with the person of the arrestee," are measured with a different, more flexible constitutional time clock. Compare Chadwick, 433 U.S. at 15, and United States v. Schleis, 582 F.2d 1166, 1170 (8th Cir. 1978) (en banc) (search of briefcase at station house not valid search incident to arrest); with Edwards, 415 U.S. at 803 (search of clothing after an overnight stay in jail is a valid search incident to arrest), and United States v. Phillips, 607 F.2d 808, 809-10 (8th Cir. 1979) (search of defendant's wallet at station house a "substantial period of time" after his arrest valid search incident to arrest). Searches of the person and those articles "immediately associated" with the person may be made either at the time of arrest or when the accused arrives at the place of detention. Edwards, 415 U.S. at 803. Unlike luggage, courts considering the question have generally concluded that a purse, like a wallet, is an object "immediately associated" with the person. See, e.g., United States v. Berry, 560 F.2d 861, 864 (7th Cir. 1977), vacated on other grounds, 571 F.2d 2 (1978); United States v. Venizelos, 495 F.Supp. 1277, 1281-83 (S.D.N.Y. 1980); and State court cases within the Circuit--Sumlin v. State, 587 S.W.2d 571, 577 (Ark. 1979) (en banc); State

v. Woods, 637 S.W.2d 113, 116 (Mo. Ct. App. 1982); State v. Hershey, 371 N.W.2d 190, 192 (Iowa Ct. App. 1985).[10]   But see United States v. Monclavo-Cruz, 662 F.2d 1285, 1290 (9th Cir. 1981) (purse like suitcase and briefcase, not clothing; search of purse at station house not valid as incident to arrest).  In United States v. Graham, 638 F.2d 1111 (7th Cir. 1981), the Seventh Circuit went a step further, holding that a purse was part of the defendant's person and that, accordingly, a search warrant authorizing a search of the person covered the officer's search of the purse:

> The human anatomy does not naturally contain external pockets, pouches, or other places in which personal objects can be conveniently carried.  To remedy this anatomical deficiency clothing contains pockets.  In addition, many individuals carry purses or shoulder bags to hold objects they wish to have with them.  Containers such as these, while appended to the body, are so closely associated with the person that they are identified with and included within the concept of one's person.  To hold differently would be to narrow the scope of a search of one's person to a point at which it would have little meaning.

Id. at 1114.[11]


We agree with the general view of this issue.  The search of Curd's purse at the station house fifteen minutes after her arrest fell well within the constitutionally acceptable time zone for searches of persons and objects "immediately associated" with them incident to arrest.  See, e.g., Phillips, 607 F.2d at 809-10; State

_____

[10]State court decisions on Federal constitutional questions may be usefully considered, particularly when Federal cases on the particular point are sparse.  Stone v. Powell, 428 U.S. 465, 493-4, n. 35 (1976).

[11]We are not troubled by the Graham court's tacitly accepting and distinguishing an Illinois case that rejected a station-house search allegedly undertaken incident to an arrest.  The Illinois case does not take into account the 1981 decision in New York v. Belton, 453 U.S. 454.  The Illinois courts are currently ruling as we do here.  See, e.g., People v. Mannozzi, 632 N.E.2d 627, 632-34 (Ill. Ct. App. 1994).

v. Wade, 573 N.W.2d 228 (Wis. Ct. App. 1997); People v. Mannozzi, 632 N.E.2d 627, 632-4 (Ill. Ct. App. 1994) (reviewing authorities); Woods, 637 S.W.2d at 116; Sumlin, 587 S.W.2d at 577.

Moreover, before placing the purse in view of, or returning it to, Curd, who was charged with assault, it was objectively reasonable to examine the purse for items that could be dangerous. See, e.g., Wade, 573 N.W.2d at 231 ("Not only was it reasonable for the officer to search the contents of her purse before giving it back to her . . ., we think it would be unreasonable for arrestees to expect that they can get back a purse without examination while they are still in custody at a police station."). Curd's privacy rights in the purse, greatly diminished by the arrest and for a reasonable time thereafter, yield to police interest in weapons and evidence. See Edwards, 415 U.S. at 808-09 ("'While the legal arrest of a person should not destroy the privacy of his premises, it does -- for at least a reasonable time and to a reasonable extent -- take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.'") (quoting United States v. DeLeo, 422 F.2d 487, 493 (1st Cir. 1970)).

Although it could be argued that a brief examination of the purse should suffice, rather than the intrusive and leisurely study of contents typical of an inventory search, we hesitate to endorse further complications in the law, requiring difficult case-by-case application. See Chadwick, 433 U.S. at 22 n. 3 (Blackmun, J., dissenting). Having determined that there was objective reasonableness, we are also precluded from putting law enforcement personnel to a further test of subjective good faith. Even assuming a possible improper motive, including simple harassment, current Fourth Amendment law shields law enforcement personnel from judicial sanction. See Graham, 490 U.S. at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable" act); Blue v. Koren, 72 F.3d 1075, 1081 (2d

Cir. 1995) ("motive is irrelevant, because a Fourth Amendment claim must be based on a showing that the search in question was objectively unreasonable.").

For the reasons indicated, we affirm.

A true copy.

    Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.