UNITED STATES of America, Plaintiff–Appellee,

v.

Ernesto G. RIGALES, Jr., Defendant–Appellant.

No. 79–5654.

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1980.

---

Herbert E. Cooper, Asst. Federal Public Defender, El Paso, Tex., for defendant–appellant.

LeRoy M. Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff–appellee.

Before THORNBERRY, GEE and REAVLEY, Circuit Judges.

GEE, Circuit Judge:

Defendant Ernesto Rigales was found guilty of receiving a pistol while a convicted felon, 18 U.S.C. §§ 922(h)(1), 924,[1] and of making a false statement in order to acquire a firearm, in violation of 18 U.S.C. §§ 922(a)(6),[2] 924. Rigales challenges his convictions primarily on the ground that a warrantless search of a zippered case found in the automobile he was driving violated his fourth amendment rights. Finding merit in this contention, we reverse.

We begin with a brief recitation of the pertinent facts. On November 15, 1978,

---

1. Section 922(h)(1) states:

   (h) It shall be unlawful for any person—
   (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

   \* \* \* \* \* \*

   to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

   Section 924 states:
   (a) Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, or in applying for any license or exemption or relief from disability under the provisions of this chapter, shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

   (b) Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm or any ammunition in interstate or foreign commerce shall be fined not more than $10,000, or imprisoned not more than ten years, or both.

   (c) Whoever—
   (1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or
   (2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States, shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to a term of imprisonment for not less than two nor more than twenty–five years and, notwithstanding any other provision of law, the court shall not suspend the sentence in the case of a second or subsequent conviction of such person or give him a probationary sentence, nor shall the term of imprisonment imposed under this subsection run concurrently with any term of imprisonment imposed for the commission of such felony.

   (d) Any firearm or ammunition involved in or used or intended to be used in, any violation of the provisions of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, shall be subject to seizure and forfeiture and all provisions of the Internal Revenue Code of 1954 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter.

2. 18 U.S.C. § 922(a)(6) states:

   (a) It shall be unlawful--

   \* \* \* \* \* \*

   (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

defendant Rigales entered Barney's Guns in El Paso, Texas, to purchase an automatic pistol. David Ripplinger, the shop manager, showed Rigales two guns. After making his selection, Rigales was unable to produce sufficient identification to convince Ripplinger that he was a Texas resident. Rigales left the shop and returned within an hour, at which time he presented Ripplinger with several rent receipts from an apartment complex in El Paso. Rigales then completed a form in the name of Ray L. Renteria in which he certified that he had never been indicted or convicted of a crime punishable by imprisonment for a term exceeding one year. He paid for the pistol and left the shop. After Rigales departed, the shop's owner, Barney Ray Meadors III, who had witnessed the purchase, remembered hearing on the previous day that a man named Renteria had been released on bond in a highly publicized case. Because he suspected that Rigales might be the same individual, the owner called the Bureau of Alcohol, Tobacco and Firearms ("ATF").

On November 30, 1978, at approximately 3:10 a. m., El Paso police officer David Lopez stopped a 1979 Lincoln Continental for illegally crossing a dirt median on the Border Highway. Rigales was driving, accompanied by two women and two men, one of whom was Ernest Domingues. Rigales showed Lopez a New Mexico drivers license bearing the name of Tomas Martinez. The car had Texas dealer license plates. Rigales explained to the officer that he worked for an auto dealer and had just sold the car to Domingues. Rigales was cited for crossing the median and for displaying dealer plates on the car after it had been sold, in violation of Texas law.

After a standard warrant check on the four passengers, Officer Lopez learned from a radio dispatcher that there were two outstanding traffic warrants for Domingues; consequently, he placed Domingues under arrest. While patting down Domingues, Officer Lopez found several unspent bullets in his pocket. Suspicious that there might be a gun nearby,[3] Officer Lopez patted down the other passengers but found no gun on any of them. He then shined a flashlight into the automobile. On the floorboard of the front seat he saw a zippered leather, or simulated leather, case approximately twelve inches by fourteen inches by two and one–half inches with a bulge in it. Lopez suspected that the case contained a gun; he picked it up and found it very heavy. Without asking who owned the case, he opened it and found a loaded Smith & Wesson nine millimeter pistol. Rigales claimed ownership of the gun, stating that he had a New Mexico license to carry it. Lopez then arrested Rigales for carrying a pistol in violation of Texas law. Several weeks later, on December 8, the gun was given to an ATF agent, Jimmy Searls, who traced it to Barney's Guns. After examining the shop's firearms records, Agent Searls attempted to locate Rigales at the address he had given, but that address was nonexistent. On December 13, the agent returned to Barney's Guns with a photograph of Rigales. Both the owner and the manager identified him as the man who had purchased the gun. Rigales was then arrested on the federal firearms charges.

At trial, Rigales moved to suppress the pistol, but his motion was denied. The court found that the pistol was in plain view, apparently because of the bulge in the zippered case. Accordingly, the court allowed the gun to be introduced into evidence. The jury found Rigales guilty as charged. Rigales appeals, raising numerous points of error, including the district court's denial of his motion to suppress. Because we agree with Rigales that the pistol should not have been admitted into evidence, we reverse his conviction without discussing his other allegations of error.

---

**3.** At trial Officer Lopez testified that:

Well, usually, where there's bullets, usually there's a gun, especially at that time of the morning, and the way he was dressed, no rea-

son for him to have rounds in his pockets. He was well dressed and nightclubbing, so it roused my suspicion that there was a gun in the vehicle or on the person.

The Supreme Court has generally recognized an "automobile exception" to the requirement that police secure a warrant before conducting a search. *See, e. g., Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). However, in several recent decisions, the Court has made clear that this exception is to be narrowly circumscribed. *See Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In *Chadwick* the Court held that a locked footlocker could not lawfully be searched without a warrant, even though it had been loaded into the trunk of an automobile parked at a curb, once it had been reduced to the possession and control of the police. In *Sanders* the Court extended *Chadwick* to prohibit a warrantless search of luggage taken from the trunk of an automobile that had been lawfully stopped. Stressing the defendant's expectation of privacy in his luggage, the Court determined that the police should have taken the luggage to the police station along with the defendant and there obtained a warrant for the search; once the officers had seized the luggage, there was no danger that the luggage or its contents could have been removed or destroyed before a search warrant could be obtained. The Court stressed that the "automobile exception" to the warrant requirement can be invoked only where the "exigency of mobility," 442 U.S. at 763, 99 S.Ct. at 2593, or other "special exigencies of the situation," *id.* at 763 n.11, 99 S.Ct. at 2593 n.11, justify the warrantless search of a suitcase. "Generally, however, such exigencies will depend upon the probable contents of the luggage and the suspect's access to those contents—not upon whether the luggage is taken from an automobile." *Id.* Thus, the

Court concluded that "as a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places." *Id.* at 753, 99 S.Ct. at 2588 (footnote omitted).

After a close examination of the record, we find that the instant case is controlled by *Sanders*. The government conceded at oral argument that Officer Lopez could easily have taken the zippered case to the police station and secured a warrant from a magistrate. In our view, this is tantamount to an admission that no exigent circumstances existed to justify the warrantless search. Officer Lopez' testimony supports this view. He testified that he had asked all the occupants of the automobile to step outside the vehicle and had patted them down; there is no indication that the case was within the reach or control of the defendant or any of the passengers. Moreover, Officer Lopez testified that after he opened the case and found the pistol, he took it to Ray Estrada, the property custodian of the police department. This fact suggests that Officer Lopez could have secured the zippered case *unopened* by simply taking it to Officer Estrada. Assessing "the exigency of mobility" at the point immediately before the search, as we are required to do by *Sanders*, 442 U.S. at 763, 99 S.Ct. at 2593, we conclude that the government has failed to carry its burden of demonstrating that exigent circumstances existed to justify a warrantless search of the zippered case.[4]

In the absence of exigent circumstances, the government seeks to rely on the following language from *Sanders* to justify the warrantless search:

> Not all containers and packages found by the police during the course of a search will deserve the full protection of the

4. We recognize that the suitcase that was searched in *Sanders* was found in the trunk of an automobile, whereas the zippered case here was found inside the passenger compartment of the automobile. This distinction may be of significance in another case where it can be shown that one of the occupants of the automobile in fact had access to a piece of luggage located in the interior of the automobile. In the absence of such a showing, however, the government cannot justify a warrantless search merely because a piece of luggage is theoretically more accessible to a passenger in the interior of an automobile than it is in an automobile trunk.

Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view" thereby obviating the need for a warrant. *Id.* at 764 n.13, 99 S.Ct. at 2593 n.13. In this regard, the government relies heavily upon Officer Lopez' testimony that the size, weight, and bulge in the zippered case betrayed its contents.[5] There was no indication, however, that the bulge was in the shape of, or resembled, a pistol. Moreover, Officer Lopez testified that the zippered case was not the type of zippered case "that pistols come in that are sold at gun shops" —in other words, not a gun case. Nothing in the trial transcript demonstrates that the zippered case was anything other than an ordinary briefcase that was simply heavy and bulging.[6] We are thus unable to say that the contents of the case could be inferred from its outward appearance; in our view, Rigales, as the owner of the zippered case, maintains an expectation of privacy in the contents of the case that should be accorded fourth amendment protection. Therefore, the government's attempt to bring the instant facts within the purview of the *Sanders* footnote is unavailing.

For the foregoing reasons, Rigales' conviction is REVERSED.

---

5. On direct examination, Officer Lopez testified as follows:

Q [Government attorney]: Did you then look into or search the car?
A: Well, I looked into the front seat of the car, and on the floorboard there in plain view was a case, and this case, it was kind of bulky. I presumed the gun was there.
Q: Tell us what the case was like.
A: It was a zipper case, simulated leather, might have been leather, and—
Q: About what size?
A: Oh, approximately 12 inches by 14 inches.
Q: Was it a thick case itself?
A: No, it was approximately about two and one–half inches thick.

Q: What if anything did you see about the case that made you think the gun was in it, a gun was in it?
A: There was a bulge in the middle. Since it was a leather case and the case was heavy, I picked it up. The case was heavy–and I was pretty sure the gun was in there. I opened the zipper case, and I was correct.

6. We are unable to examine either the zippered case itself or a photograph of it because the zippered case was apparently left in the automobile driven by Mr. Rigales at the time he was arrested by Officer Lopez. Neither the case nor a photograph were introduced into evidence below, so we, of necessity, must rely on the descriptions of the case found in the trial transcript.