UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard JOHNSON,
Defendant–Appellant.

No. 86–3763.

United States Court of Appeals,
Fifth Circuit.

Dec. 17, 1987.

Kyle Schonekas, Marc D. Winsberg, New Orleans, La. (court-appointed), for defendant-appellant.

Lawrence Benson, Peter G. Strasser, Asst. U.S. Attys., John P. Volz, U.S. Atty., New Orleans, La., for plaintiff-appellee.

Before REAVLEY, JERRE S. WILLIAMS and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case involves a warrantless search of a zipper-like briefcase by Postal Inspectors during the detention and interrogation of a mail carrier. The Inspectors found evidence during this search upon which the mail carrier was indicted and convicted of embezzlement of mail. The district court denied the defendant's motions to suppress this evidence found during the search of the briefcase. We reverse, finding that this was not a valid warrantless search incident to an arrest.

## I. *Factual Background*

Appellant Richard Johnson, a mail carrier at the Harvey, Louisiana, Branch of the United States Post Office, was being investigated for embezzlement of mail in violation of 18 U.S.C. § 1709. Someone on Johnson's route had reported that she had never received several packages that had been mailed to her. On January 17, 1986, Postal Inspectors prepared a decoy letter containing silver coins and addressed to "Rare Coins, Inc." and deposited it along with an unrelated postcard in a collection box on Johnson's route. Johnson was observed removing the mail from this collection box on this day. When Postal Inspector Kuhn went through Johnson's collection mail upon Johnson's return to the post office, Kuhn found the postcard but not the decoy letter. Kuhn then inspected other areas in the post office where Johnson might have left the decoy letter but did not find it.

At this point, Inspector Kuhn radioed Inspector Mackert to stop Johnson before he left work for the day and to ask him to return to the post office for questioning. Mackert stopped Johnson as Johnson was about to enter his car. Mackert identified himself, showed Johnson his credentials, and asked Johnson to accompany him inside for questioning. Johnson voluntarily agreed to go inside. Inspector Mackert later testified that he heard the sound of silver coins jingling in Johnson's pocket as the two walked inside. Inspector Kuhn joined Mackert and Johnson in the branch manager's office for the questioning. Johnson asked if he was under arrest. Kuhn replied that he was not under arrest at that time. Kuhn read a "Warning and Waiver of Rights" form to Johnson, and Johnson signed it. Also at this time, Inspector Mackert gave a pat down inspection of Johnson as a safety precaution although neither Inspector had reason to suspect that Johnson was armed. No weapons were found in this pat down. Johnson later testified that he did not feel free to leave the room at this time.

Inspector Kuhn asked Johnson if he had any mail on his person. When Johnson said no, he was asked to empty his pockets. Johnson complied and produced the decoy letter from his back pocket. Johnson claimed he had dropped this letter earlier in the day and had placed it in his pocket intending to put it in the collection tray. At this point, the evidence shows that the Inspectors' disposition toward Johnson became much harsher. Inspector Kuhn spoke sternly to Johnson and ordered him to sit down. Kuhn also undertook a more thorough search of Johnson's person.

Johnson had a small zipper-like briefcase in his possession. Evidently, Johnson reached for the briefcase, telling the Inspectors he wanted a cigarette. Inspector Mackert took possession of the briefcase over Johnson's objections. Johnson apparently made a motion toward the briefcase as Mackert grabbed it and told Mackert that he could not go through the briefcase. It is not clear whether Inspectors Mackert and Kuhn reasonably believed the briefcase to be government property. Johnson apparently said it was government property but also said it was his personal briefcase and contained personal items and union papers. Johnson was a union representative, and he said the briefcase contained information relating to potential worker grievances. Inspector Kuhn authorized Mackert to search the briefcase over Johnson's objections. Inspector Mackert asserted an intent to look for weapons in the briefcase. Inspector Kuhn left the room at this time to call a government attorney. Inspector Mackert then conducted a thorough search of the briefcase and found the letter addressed to Anita Self which later became the subject of Count 2 of Johnson's indictment. Inspector Kuhn was not present during the search of the briefcase.

When Inspector Kuhn returned to the room he requested that Johnson consent to a search of his car. Johnson agreed and signed a consent waiver. Johnson's car was searched but no further evidence was discovered. The Inspectors then required Johnson to accompany them to the Main Post Office in New Orleans where Johnson was fingerprinted and photographed. Johnson was permitted to leave after that.

Johnson was subsequently indicted on two counts of embezzlement of mail under 18 U.S.C. § 1709. The first count involved the decoy letter, and the second count involved the letter addressed to Anita Self. Johnson's trial counsel moved the district court to suppress both letters, claiming both were obtained as the result of an illegal search. The district court denied this motion. The court also denied appellant's motion for reconsideration of its denial of suppression of the Anita Self letter. A jury acquitted Johnson on the first count but convicted him on the second count. Johnson is appealing the district court's denial of his suppression motions as to the Anita Self letter.

The ultimate issue in this case is whether the district court properly denied Johnson's motions to suppress the Anita Self letter— the letter which formed the basis of Count 2 of Johnson's indictment. Because there was no search warrant, the government has to justify the search of Johnson's briefcase under one of the warrantless search exceptions. Three of these exceptions have been put forward by the government or the district court at some point in the proceedings.[1] The only exception urged by the government in this appeal, however, is the search incident to an arrest exception. We confine our discussion to this one claim.

## II. *Was there a valid arrest?*

■ 18 U.S.C. § 3061(a)(3) authorizes Postal Service officials to "make arrests without warrant for felonies cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such a felony." This Court has held the "reasonable grounds" requirement under 18 U.S.C. § 3061(a)(3) to be the equivalent of "probable cause." *United States v. Gibson*, 462 F.2d 400, 402 (5th

Cir.1972). The Supreme Court has recognized that "Congress enacted 18 U.S.C. § 3061 to make clear that postal inspectors are empowered to arrest without warrant upon probable cause." *United States v. Watson*, 423 U.S. 411, 416 n. 4, 96 S.Ct. 820, 824 n. 4, 46 L.Ed.2d 598 (1976).

To establish probable cause for the Postal Inspectors to arrest Johnson, the Inspectors knew the following facts: (1) They had received a number of customer complaints about missing mail on Johnson's route. (2) Johnson had been seen to pick up the mail in the collection box in which the decoy letter was placed. (3) The planted postcard was found in the collection mail upon Johnson's return to the post office, but the decoy letter was not. (4) They had heard silver coins jingling in Johnson's pocket as he was escorted inside. (5) Johnson denied he had mail on his person, but upon being asked to empty his pockets he pulled the decoy letter from his pocket.

Probable cause for an arrest exists where the facts and circumstances within the knowledge of the arresting officer, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *United States v. Ashcroft*, 607 F.2d 1167, 1170 (5th Cir.1979), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2944, 64 L.Ed.2d 826 (1980); *United States v. Williams*, 594 F.2d 86, 91 (5th Cir.1979). The record before this Court clearly indicates that the Inspectors had "probable cause" to arrest Johnson. *United States v. Roberson*, 650 F.2d 84, 86 (5th Cir.1981), *cert. denied*, 454 U.S. 1100, 102 S.Ct. 675, 70 L.Ed.2d 642 (1981).

---

1. These exceptions are (1) the search incident to an arrest exception, (2) the exigent circumstances exception, (3) and an administrative search exception under § 724.12 of the Postal Service Administrative Support Manual. The government seems to have emphasized the administrative search exception in the district court but appears to have abandoned this exception on appeal. The district court apparently based its

denial of the suppression motions partially on the exigent circumstances exception. Neither the government claimed nor the district court found that there had been an arrest of Johnson and that the search was valid as incident to that arrest. The search incident to an arrest exception appears to have been first seriously advanced on this appeal.

The inquiry now becomes whether Johnson actually had been arrested at the time his briefcase was searched. The Inspectors' disposition toward Johnson clearly became more hostile after the discovery of the decoy letter in Johnson's pocket. The government now claims that at that time the detention of Johnson was transformed into an arrest. The government asserts that Inspector Kuhn's prior statement denying that Johnson was under arrest, the fact that Johnson was never told specifically he was under arrest, and the fact that Johnson was later released after fingerprinting are not determinative of the existence of a custodial detention that constituted an arrest for Fourth Amendment purposes. The government is correct in asserting that an "arrest" does not require a specific procedure and a statement that the subject is under arrest. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (a case which, ironically, discusses whether a custodial questioning rose to the level of an arrest thereby requiring probable cause in order to *protect* a defendant's Fourth Amendment rights); *United States v. Morin*, 665 F.2d 765 (5th Cir.1982); *United States v. Roberson*, 650 F.2d 84 (5th Cir.1981); *United States v. Ashcroft*, 607 F.2d 1167 (5th Cir.1979), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2944, 64 L.Ed.2d 826 (1980). "[N]either formal words [of arrest] nor the filing of a formal arrest record is required to place an individual under arrest." *United States v. Roberson*, 650 F.2d at 86. *See also Dunaway v. New York, supra; United States v. Ashcroft, supra.*

Once probable cause has been shown, this Court has considered three additional factors in deciding whether the interrogation of a suspect has occurred in a custodial context for Fourth Amendment purposes: (1) whether the interrogating officer's subjective intent was to hold the defendant; (2) whether the defendant's subjective belief was that his freedom was significantly restricted; and (3) the degree to which, at the time of interrogation, the investigation had focused on defendant. *United States v. Morin*, 665 F.2d at 769; *United States v. Roberson*, 650 F.2d at 86;

*United States v. Williams*, 594 F.2d at 92 n. 12; *United States v. Warren*, 578 F.2d 1058, 1071 (5th Cir.1978) (*en banc*), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). All three of these criteria have been met in this case. Johnson was escorted into the post office and given his *Miranda* warnings. These actions indicate that the Inspectors intended to detain Johnson and that their investigation had focused on him at this time. Furthermore, Johnson testified that he had not felt free to leave during the questioning.

Overall, sufficient probable cause existed for Johnson's detention by Inspectors Kuhn and Mackert, and such detention constituted an arrest within the full statutory authority granted to Postal Service officials under 18 U.S.C. § 3061. *See United States v. Roberson, supra.*

III. *Was the briefcase subject to a search incident to arrest?*

Having established that there was a detention of Johnson prior to the search of his briefcase which constituted a valid arrest, we now must determine the critical question—whether the warrantless search of the briefcase was valid as incident to that arrest. "[B]ecause each exception to the warrant requirement invariably impinges to some extent on the protective purpose of the Fourth Amendment, the few situations in which a search may be conducted in the absence of a warrant have been carefully delineated and 'the burden is on those seeking the exemption to show the need for it.'" *Arkansas v. Sanders*, 442 U.S. 753, 759–60, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979), *quoting United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). The Supreme Court has "limited the reach of each exception to that which is necessary to accommodate the identified needs of society." *Arkansas v. Sanders*, 442 U.S. at 760, 99 S.Ct. at 2591.

The claim of the government is that the briefcase was in Johnson's immediate control and within his reach at the time of his arrest and that the Postal Inspectors seized and searched the briefcase in order to pre-

vent Johnson from gaining access to weapons or destructible evidence contained therein. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) initially established the scope of a warrantless search incident to a lawful arrest. Under *Chimel,* a search of an arrestee's person and the area within his immediate control or reach is allowed. The rationale behind this search warrant exception is to protect law enforcement officers from possibly being injured by the arrestee with weapons concealed on an arrestee's person or within reach and to prevent destruction of evidence concealed on his person or within reach. *Chimel v. California,* 395 U.S. at 762–63, 89 S.Ct. at 2040. *See also United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Fundamentally, the constitutionality of a warrantless search incident to an arrest does not depend upon whether the arresting officers have any indication that the arrestee possesses weapons or evidence—the mere fact of the arrest, standing alone, authorizes the search. *Michigan v. DeFillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979); *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973).

In *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Supreme Court limited the scope of a warrantless search incident to an arrest as it applied to luggage and personal property. Under the *Chadwick* analysis, a warrantless search of personal property incident to an arrest cannot be carried out once the personal property is within the exclusive control of law enforcement officials and there no longer exists any danger that the arrestee might gain access to weapons or destructible evidence contained therein. "In our view, when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority." *United States v. Chadwick,* 433 U.S. at 15, 97 S.Ct. at 2486.

The court in *Chadwick* held that the law enforcement officers could *seize* the personal property without a search warrant but could not *search* it until a warrant was procured. The Court implicitly recognized that the seizure of personal property is much less intrusive into the privacy rights of a person than a search of the property. This distinction between allowing a warrantless seizure of personal property incident to an arrest but not a search of the property until a warrant is procured was reiterated in another case by the Supreme Court two years later. "Where—as in the present case—the police, without endangering themselves or risking loss of the evidence, lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained." *Arkansas v. Sanders,* 442 U.S. at 766, 99 S.Ct. at 2594. We and other circuits have delineated application of the rule. *United States v. Rigales,* 630 F.2d 364 (5th Cir.1980) (warrantless search of a zippered case not valid as incident to arrest); *United States v. Monclavo–Cruz,* 662 F.2d 1285 (9th Cir.1981)(warrantless search of purse one hour after arrest and after purse was in exclusive police custody did not fall within search incident to an arrest exception); *United States v. Schleis,* 582 F.2d 1166 (8th Cir.1978)(warrantless search of briefcase at a police station not valid as incident to arrest).

These cases have noted that law enforcement officers can safely secure closed personal property seized and taken from an arrestee in an evidence locker or a similar depository until a search warrant can be obtained. *E.g. United States v. Chadwick,* 433 U.S. at 4, 97 S.Ct. at 2480; *United States v. Monclavo–Cruz,* 662 F.2d at 1289; *United States v. Schleis,* 582 F.2d at 1172. The rule is justified because it eliminates any exigencies besides the arrest itself [2] that would justify the need for an immediate warrantless *search.* [3] In such circum-

---

**2.** The exigency of the arrest merely justifies the *seizure* of the property.

**3.** *United States v. Moschetta,* 646 F.2d 955, 959 (5th Cir.1981) *judgment vacated on other grounds sub nom United States v. Spieler,* 457

stances, there is no danger that the personal property or its contents can be removed or destroyed before a valid search warrant is obtained. *Arkansas v. Sanders,* 442 U.S. at 762, 99 S.Ct. at 2592; *United States v. Chadwick,* 433 U.S. at 13, 97 S.Ct. at 2484; *United States v. Rigales,* 630 F.2d at 367. "The only governmental interest that would be served by permitting this warrantless search would be to relieve the law enforcement officers of the inconvenience of obtaining a warrant before conducting an investigatory search." *United States v. Schleis,* 582 F.2d at 1173. Mere convenience or efficiency is not a sufficient governmental interest to override the requirements of the Fourth Amendment warrant clause. *Mincey v. State of Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

The Supreme Court in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed. 2d 572 (1982), narrowed the scope of the *Chadwick* and *Sanders* analysis as it applied to containers found in automobiles. In *Ross,* the Supreme Court held that when law enforcement officers have probable cause to search an entire vehicle lawfully stopped under the automobile exception established by *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), then they can also open and search any containers or packages found in the vehicle that may conceal the object of the search. 456 U.S. at 825, 102 S.Ct. at 2173. The

*Ross* court did not overrule *Sanders* and *Chadwick,* but distinguished them by noting that in those two cases, the law enforcement officers did not have probable cause to search the vehicles because the focus of their search was already narrowed to a piece of luggage which just happened to be in a car when seized by the officers. The case at bar, of course, does not involve an automobile search and the attendant concerns about an automobile's inherent mobility. Case authority is lacking to establish a general right to search closed packages as an incident to arrest in non-vehicular context.

Finally, it should be noted that the attempts by the government in the past to limit the "do not search" holdings of *Chadwick* and *Sanders* to locked footlockers or similar sturdy luggage have for the most part failed.[4] Thus the Supreme Court held in *United States v. Ross* that no distinction can be made between containers such as locked trunks and flimsier containers (such as paper bags and orange crates) and that any distinction based on the nature of the container has no basis in the language or meaning of the Fourth Amendment. 456 U.S. at 822, 102 S.Ct. at 2171. *See also Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981).[5]

The Circuit Courts have also read the holdings of *Chadwick* and *Sanders* rather broadly in recognizing reasonable expecta-

---

U.S. 1113, 102 S.Ct. 2919, 73 L.Ed.2d 1324 (1982), involved an exigency which this Court held justified the warrantless *seizure and search* of a briefcase found in the trunk of a car. After applying the principles of *Chadwick* and *Sanders,* this Court held that the law enforcement officers' reasonable belief that the briefcase contained a loaded spring-triggered pistol justified an immediate warrantless search of the briefcase. Fears that a container may contain explosives is another example of an exigency requiring opening and searching the property.

**4.** Footnote 13 of the *Sanders* opinion has been used as the basis for this challenge: "Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from

their outward appearance. Similarly, in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant." 442 U.S. at 764 n. 13, 99 S.Ct. at 2593–93 n. 13.

**5.** The *Robbins* case involved opaque green plastic bags containing large quantities of marihuana found in a car. A plurality of the Supreme Court held that the defendant had a reasonable expectation of privacy in the plastic bags and therefore the search of the bags without a warrant violated the Fourth and Fourteenth Amendments. Although the specific holding of the *Robbins* case was rejected one year later by a majority of the court in *United States v. Ross* because the law enforcement officers did have probable cause to search the entire vehicle and therefore any containers therein, the expectation of privacy analysis elaborated by *Robbins* was reaffirmed in *Ross.*

tions of privacy in a wide variety of personal property. *E.g. United States v. Monclavo–Cruz, supra* (reasonable expectation of privacy in a purse). In *United States v. Rigales, supra,* this Court held that a bulge in a zippered case was insufficient for police to base an inference that the case contained a weapon and thereby justify a warrantless search of the case.

■ Applying these principles to the case at bar, we conclude that the district court erred in denying Johnson's motions to suppress the letter found during the warrantless search of his briefcase. Johnson had a reasonable expectation of privacy in the briefcase and its contents. *Monclavo–Cruz; Rigales; Schleis;* all *supra.* Furthermore, Johnson told the Inspectors that the briefcase contained personal items and that he did not wish the Inspectors to search the briefcase.

The Inspectors were acting properly in *seizing* Johnson's briefcase after his arrest but not in *searching* it. Once Inspector Mackert had taken possession of the briefcase, there was no realistic chance that Johnson could have regained possession of the briefcase to procure a weapon or destroy evidence. The briefcase was no longer within Johnson's control or reach. At the very least, Inspector Kuhn could have taken the briefcase with him when he left the room to call the government attorney and could have put it in a secure storage place until a search warrant could be obtained.

There were no exigent circumstances that justified this type of warrantless search of Johnson's briefcase. "Unlike searches of the person,[6] (citations omitted), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest." *Chadwick,* 433 U.S. at 16 n. 10, 97 S.Ct. at 2486 n. 10. The exigency of the arrest itself merely justified the *seizure* but not the *search* of the briefcase.

The case at bar is distinguishable from *United States v. Roberson, supra.* The *Roberson* case also involved an investigation of a mail carrier by Postal Inspectors for embezzlement of mail. In *Roberson,* however, the Inspectors saw the mail in her open purse. The evidence obtained in the warrantless search of the purse was admissible under the plain view doctrine. The plain view doctrine was recognized by the Supreme Court as preventing any reasonable expectations of privacy in *open* containers. *Arkansas v. Sanders,* 442 U.S. 764 n. 13, 99 S.Ct. 2593–94 n. 13. The plain view doctrine has no application in the case at bar because the Inspectors did not see Johnson put the letter in his briefcase nor could they discover the letter until they actually searched the briefcase.

■ The government properly did not attempt to justify the search as an "inventory search." But the nature of the search was such that it is useful to distinguish an inventory search from the search at issue. An inventory search of all the clothing and property of the arrestee occurs at a police station prior to incarceration. *Colorado v. Bertine,* —— U.S. ——, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Johnson,* 815 F.2d 309 (5th Cir.1987). The justifications for an inventory search differ from those of a search incident to an arrest. *Colorado v. Bertine,* —— U.S. at ——, 107 S.Ct. at 741–42; *Illinois v. Lafayette,* 462 U.S. at 645, 103 S.Ct. at 2609. The primary rationale of the inventory search is to protect the possessions of an arrestee from theft when they are taken from him prior to his incarceration. Such a search also protects the police from false claims being made by arrestees regarding what was taken from their possession at the station house. *Colorado v. Bertine,* —— U.S. at ——, 107 S.Ct. at 741–42; *Illinois v. Lafayette,* 462 U.S. at 646, 103 S.Ct. at 2609. Making a complete inventory of the items in an arres-

---

**6.** Including the clothing worn by an arrestee, *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) or a jacket within

his reach, *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

tee's possession upon jailing, including items in any containers, pursuant to standardized police procedures, has been held to be reasonable under the Fourth Amendment even if there is an evidence locker or similar depository in which the items could be placed unopened. *Illinois v. Lafayette,* 462 U.S. at 648, 103 S.Ct. at 2611. In the case at bar, there was no incarceration of Johnson. He was released after fingerprinting, and therefore the justifications for an inventory search were wholly lacking.[7]

The district court apparently relied on *United States v. Frick,* 490 F.2d 666 (5th Cir.1973), *cert. denied sub nom. Petersen v. United States,* 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974), in denying appellant's suppression motions. The *Frick* case involved a warrantless seizure and search of an attache case lying on the back seat of a car after the owner was arrested near his car. In *Frick,* as in the case at bar, the warrantless search was justified as being incident to an arrest. This Court upheld the search in *Frick.* That case, however, was decided before *United States v. Chadwick, Arkansas v. Sanders,* and *United States v. Ross,* and its holding no longer is viable in the light of the Supreme Court decisions.

### IV. *Conclusion*

The district court erred in denying appellant's motions to suppress the Count 2 let-

ter found in the warrantless search of appellant's briefcase after his arrest. The briefcase was no longer in appellant's immediate control or within his reach after one of the Inspectors took possession of it. The subsequent search of the briefcase cannot be justified as incident to appellant's arrest. The government has failed to carry its burden of showing the need for extending the exception of searches incident to arrest to allow the warrantless search of appellant's briefcase. The decision of the district court must be reversed.

CONVICTION VACATED.

JUDGMENT OF ACQUITTAL RENDERED.

---

**7.** Had Johnson been incarcerated, his briefcase and all its contents could have been searched and inventoried pursuant to standardized police procedures, *but only at the time of his incarceration.* The fact that the person is being jailed is the crucial factor in the inventory search warrant exception as it applies to the search of his possessions.

This power of law enforcement officers to perform inventory searches of the possessions of jailed suspects, however, has been restricted to prevent its use as a pretext to perform otherwise unreasonable searches. *United States v. Prescott,* 599 F.2d 103 (5th Cir.1979); *United States v. Edwards,* 577 F.2d 883 (5th Cir.), *cert. denied,* 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); *United States v. Gravitt,* 484 F.2d 375 (5th Cir.), *cert. denied,* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974). In other words, the police cannot incarcerate someone, under the guise of an inventory search, for the

primary purpose of searching containers in his possession for incriminating evidence without a warrant. *United States v. Capra,* 501 F.2d 267 (2d Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975); *United States v. Vidal,* 637 F.Supp. 327 (S.D.N.Y.1986), *aff'd* 810 F.2d 1161 (2d Cir.1986). "Inventory searches must be limited to effectuation of the recognized purposes for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible." *United States v. Prescott,* 599 F.2d at 105.

We recognize that the distinction we are making between the search incident to arrest exception and the inventory exception, and what is allowed under each of these exceptions, may appear to be. contrived. The justifications behind these exceptions, however, lead to this result. Furthermore, this is the clearly established law.