**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Richard JOHNSON,
Defendant–Appellant.**

**No. 86–3763.**

United States Court of Appeals,
Fifth Circuit.

May 24, 1988.
Rehearing and Rehearing En Banc
Denied July 7, 1988.

Kyle Schonekas, Marc D. Winsberg, New Orleans, La. (court appointed), for defendant-appellant.

John P. Volz, U.S. Atty., Peter G. Strasser, Asst. U.S. Atty., New Orleans, La., Mervyn Hamburg, Atty., Appellate Section, Criminal Div., Justice Dept., Washington, D.C., for plaintiff-appellee.

Before REAVLEY, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

### ON PETITION FOR REHEARING

(Opinion Dec. 17, 1987, 5th Cir.1987, 834 F.2d 1191)

PER CURIAM:

Treating the government's motion for rehearing en banc as a petition for panel rehearing, the motion is granted. We withdraw our previous opinion, *United States v. Johnson*, 834 F.2d 1191 (5th Cir.1987), and substitute the following:

Richard Johnson appeals his conviction for embezzlement of mail. He contends that the search of his zipper-like briefcase, which produced the incriminating evidence, was in violation of the Fourth Amendment. Finding that the uncontroverted evidence shows that the search was permissible as incident to a valid arrest, we affirm.

I.

Johnson, a mail carrier, was being investigated for embezzlement of mail. When a decoy letter, addressed to "Rare Coins, Inc.," failed to turn up in Johnson's collection box, Postal Inspector Michael Mackert stopped Johnson as he was entering his car to leave work for the day. Johnson voluntarily agreed to accompany Mackert back into the post office for questioning. Johnson was carrying a small zipper-like briefcase.

Mackert brought Johnson into the branch manager's office where they met Postal Inspector William Kuhn, who was conducting the investigation with Mackert. Johnson asked if he was under arrest and was

told that he was not. Kuhn read Johnson his rights and Johnson signed the waiver of rights form.[1] There was a pat down search of Johnson at about that time. Johnson was asked some preliminary questions. He was then asked if he had any mail on him. When Johnson replied that he did not, he was asked to empty his pockets. As he was doing so, he removed the Rare Coins letter from his back pocket.

The questioning then took a decidedly hostile turn. Johnson said he had dropped the Rare Coins letter while on his route, then put it in his back pocket and had forgotten about it. Kuhn told Johnson that he did not believe him. Attention was then focused on the briefcase. The briefcase had been originally placed on the floor. According to Mackert and Kuhn, the briefcase had, at some point, been placed on the desk between the three men. After finding the Rare Coins letter, Mackert reached for the briefcase. At that point, Johnson moved toward the case and objected to Mackert and Kuhn looking into it. After a brief hesitation, Mackert began to go through the case as Kuhn left the room to make a telephone call. Mackert discovered a bulky letter addressed to Anita Self inside the briefcase.

Johnson's version of what happened is slightly different. He testified at the suppression hearing that the briefcase was to the side of his chair with some booklets. He went for the briefcase to get a cigarette. He asked if he could smoke and Mackert told him no. Mackert then demanded the briefcase which Johnson turned over to him. The search of the briefcase turned up the Anita Self letter.

After the discovery of the Anita Self letter, Johnson was eventually taken to the Post Office in New Orleans where he was photographed, fingerprinted, and released. He was indicted on a two-count indictment for embezzlement of mail. 18 U.S.C. § 1709. He was acquitted of the first count involving the Rare Coins letter but convicted of the second count involving the

Anita Self letter. He now appeals claiming that the Anita Self letter should have been suppressed because it was seized in violation of the Fourth Amendment.

## II.

### A.

■ The Fourth Amendment to the United States constitution prohibits searches and seizures that are "unreasonable." A search incident to an arrest is a reasonable search and, hence, permitted by the Fourth Amendment, even if the police do not have a search warrant. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Under the search incident to arrest scenario, police may search the arrestee's person and "the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763, 89 S.Ct. at 2040.

One troubling application of *Chimel* has been in the search of closed containers seized from the arrestee's person or immediate control. In *United States v. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973), the Supreme Court made clear that, regardless of the reason for the search, the police may thoroughly search the person, including opening and inspecting a crumpled cigarette package seized from the arrestee's person, pursuant to a lawful arrest. However, in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the Court suggested that a different rule might apply to searches of closed containers within a person's immediate control, as compared to on his person, at the time of arrest. *Chadwick* concerned a double-locked footlocker that was seized at the time of arrest. *Id.* at 4, 97 S.Ct. at 2480. However, instead of immediately searching the footlocker, it was separated from the arrestees and transported to the downtown federal building. *Id.* There, an hour and a half after

---

1. Johnson testified that nobody read him his rights but he does not contest that he read and

signed the waiver of rights form.

the arrests and without other exigencies or a warrant or consent, the federal agents opened and searched the footlocker. *Id.* The Court held that the search could not be viewed as incident to an arrest because "the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody." *Id.* at 15, 97 S.Ct. at 2485–86. The Court drew the line of when a warrant was needed to search property "at the point where the property ... comes under the exclusive dominion of police authority." *Id.* at 15, 97 S.Ct. at 2486. In drawing that line, the Court distinguished searches of possessions within the person's immediate control and searches of the person. *Id.* at 16 n. 10, 97 S.Ct. at 2486 n. 10.

Although the Court in *Chadwick* seemed to have drawn a distinction between searches of persons and searches of possessions in the arrestee's immediate control, the Court discarded that distinction a few years later in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). *Belton* concerned the search of a zippered pocket of a jacket found in the passenger section of a car after the four men in the car had been arrested and taken out of the car. *Id.* at 456, 101 S.Ct. at 2862. After holding that the passenger section of the car was within the arrestee's reach within the meaning of *Chimel*, the Court concluded that any container [2] found in a search of that area may also be searched. *Id.* at 460, 101 S.Ct. at 2864. The Court reasoned, "[s]uch a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." *Id.* at 461, 101 S.Ct. at 2864. The Court specifically distinguished *Chadwick*, stating that *Chadwick* did not involve "an arguably valid search incident to a lawful custodial arrest" because of the time lapse between the arrest and the search. *Belton*, 453

U.S. at 461–62, 101 S.Ct. at 2864–65. The Court also rejected the argument that by seizing the jacket, it was in the police officer's exclusive control: "under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid." *Id.* at 461 n. 5, 101 S.Ct. at 2865 n. 5.

▪ We conclude that *Belton* eradicates any differences between searches of the person and searches within the arrestee's immediate control. Law enforcement officers may, pursuant to a valid arrest, search any container on the person or within his reach. *Accord United States v. Anderson*, 813 F.2d 1450, 1455–56 (9th Cir.1987); *United States v. Herrera*, 810 F.2d 989, 990–91 (10th Cir.1987); *United States v. Rosenthal*, 793 F.2d 1214, 1232 (11th Cir.), *modified on other grounds*, 801 F.2d 378 (1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987); *United States v. Litman*, 739 F.2d 137, 138–39 (4th Cir. 1984) (en banc). Of course, that search must be contemporaneous with the arrest. *Cf. Chadwick*, 433 U.S. at 15, 97 S.Ct. at 2485.

## B.

In order to determine whether the search of the briefcase was incident to a lawful arrest, we must determine if Johnson was arrested. The district court's brief order denying the motion to suppress the Anita Self letter stated that "probable cause existed for the arrest of the Defendant and the search of the briefcase was permissible as a search for weapons or as a search to preserve further evidence." Although the court's holding implies that the search was valid as pursuant to an arrest, the court did not make findings as to when Johnson was arrested and when his briefcase was seized. Those issues are important and we would normally remand for factual findings if the evidence was disputed. However, as we will show, the result we reach is the same no matter whose scenario is believed.

---

**2.** A "container" includes "luggage, boxes, bags, clothing, and the like." *Belton*, 453 U.S. at 460 n. 4, 101 S.Ct. at 2864 n. 4.

■ Prior to the discovery of the Rare Coins letter, Johnson was expressly told by the inspectors that he was not under arrest. Thereafter, inquiries became demands, and the inspectors rejected his explanations with hostility. A reasonable person in Johnson's position would have understood that he was no longer free to move without the consent of the inspectors but, instead, was arrested and in their custody. *See United States v. Bengivenga,* 845 F.2d 593, 596 (5th Cir.1988) (en banc).

■ Johnson does not contend that he was arrested prior to the discovery of the Rare Coins letter. We note, however, that even if Johnson were arrested at an earlier point, even as early as when the *Miranda* warnings were given, it would not change the result. The *Miranda* warnings were followed by a few preliminary questions, Johnson emptying his pockets with the discovery of the Rare Coins letter, and then the search of the briefcase. That sequence of events would still make the search of the briefcase "incident" to the arrest. *See Herrera,* 810 F.2d at 990 (search of briefcase of post office employee inside post office a few minutes after person's arrest in parking lot was incident to arrest).

■ Almost immediately following the arrest, Mackert seized and searched the briefcase. The testimony at the suppression hearing shows beyond doubt that the briefcase was within Johnson's immediate control: he could reach for the briefcase. Both Kuhn and Mackert testified that the briefcase was on the desk between the men. As Mackert reached for it, Johnson objected and may have reached for it himself. Johnson testified that the briefcase was on the floor beside him and that he actually grabbed the briefcase to retrieve a cigarette and then Mackert asked for it. It is beyond doubt that the briefcase was within Johnson's reaching distance, and, therefore, under his immediate control. *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040.

Johnson contends, however, that the briefcase was not in his immediate control. He argues that the postal inspectors had exclusive control of the briefcase prior to his arrest at the time of the discovery of the Rare Coins letter and, therefore, the search was not incident to the arrest. His petition for rehearing contains testimony, which he attributes to Mackert, to the effect that Mackert was the one who placed the briefcase on the table next to Johnson.

We need not decide if *Belton* extends to a situation where a closed container is seized prior to arrest and then searched when the suspect is subsequently arrested. The evidence, as we have shown, unequivocally shows that the briefcase was within his immediate control in the *Chimel* sense. Johnson's argument based on Mackert's purported trial testimony is unpersuasive. First, the record does not include the transcript of Mackert's trial testimony. *See* Fed.R.App.P. 10(b), 11(a) (Duty of appellant to order transcript and to have it included in the record).

■ Even if we were to accept this brief excerpt quoted in the petition as the accurate testimony of Mackert, Johnson's argument fails. Mackert is supposed to have said merely that he believed that he was the person who put the briefcase next to Johnson. It does not follow from that testimony that Mackert gained exclusive control of the briefcase or that it was not in Johnson's immediate control. Johnson's protests when Mackert said he was going to look in the briefcase indicate that Mackert never exercised exclusive control. Indeed, Johnson himself testified that he grabbed the briefcase to go for a cigarette. Even if Mackert did move or put the briefcase down at one point, there is no showing that he ever took and maintained exclusive possession of the briefcase. Nor is there any indication that Mackert gained exclusive control of the briefcase and then gave it back to Johnson so that he could search it. The purported excerpt of Mackert's trial testimony is consistent with his and Kuhn's suppression hearing testimony that Johnson had immediate control of the briefcase at the time of the arrest. Johnson, the only other person in the room, also testified that he had control of the briefcase. Taken together, the evidence establishes that Johnson had "immediate control" of the briefcase in the *Chimel* sense.

Since the briefcase was within Johnson's immediate control, the postal inspectors could search it, opening it up and looking through its contents, as incident to a lawful arrest. *See supra* § II(A). Johnson's motion to suppress the Anita Self letter found in that search was properly denied.

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, specially concurring:

As the author of the panel opinion which is here reversed on rehearing, I add a few words. Two serious factual issues raised considerable doubt in my mind originally that the Supreme Court's decision in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), controlled this case.

First, appellant was told specifically when he was taken into the interrogation room by the postal inspectors that he was not under arrest. Yet, the record indicates the likelihood that he was at that time deprived of the possession of the briefcase he had been carrying, which means he was deprived of the possession of the briefcase before he was arrested. It was not in his "immediate control". *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).

Second, just when an arrest took place in this case is quite unclear. It may well have taken place after the briefcase had been opened and searched by the postal inspectors. In the record their justification was that they believed the briefcase was government property, not that they were searching the briefcase as incident to a lawful arrest. Indeed, it is ironic that Johnson was acquitted of the charge of criminal conduct in connection with the evidence which was actually found on his person. It is not clear in the record that he, as a legal matter, was placed under arrest at the time the evidence found on his person was yielded to the possession of the inspectors.

Thus, it was my conclusion in writing the original panel opinion that *Belton* had to be stretched substantially beyond its own facts to justify the search of appellant's briefcase. I have now concluded *Belton* constituted a virtual overruling of the rationale of *Chimel v. California, supra.* *Belton* overruled this rationale in spite of the fact that the opinion for the Court in *Belton* stated its limitation upon *Chimel* solely in terms of the search of the passenger compartment of an automobile after a lawful custodial arrest of the occupant of the automobile. The only limitation upon this conclusion was contained in a footnote to the effect that there was "no need" in the case to consider whether the search and seizure was permissible under the so-called "automobile exception". 453 U.S. at 462 n. 6, 101 S.Ct. at 2865 n. 6.

The role of this Court is to apply the decisions of the Supreme Court to the facts of the case before us in the way that we would predict the Supreme Court would apply those decisions. I am now convinced that the Supreme Court, as other circuit courts have become convinced, would push *Belton* beyond its facts and treat the *Chimel* rationale as no longer accurately reflecting the law. I, therefore, concur in the decision upon rehearing, but not upon the ground that *Chimel* leads to this result. Rather, I concur on the ground that *Belton* leads to the result by limiting *Chimel* almost to the point of no longer being any substantial authority at all in restricting searches incident to arrest.